# EXHIBIT 3

No. 21-11911

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

ELVA BENSON,

Plaintiff-Appellee,

v.

ENTERPRISE LEASING COMPANY OF ORLANDO, LLC;
& ENTERPRISE HOLDINGS, INC.,

Defendants-Appellants.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

_____

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
SUPPORTING PLAINTIFF-APPELLEE AND AFFIRMANCE**

_____

BRIAN M. BOYNTON
  *Acting Assistant Attorney General*

MICHAEL S. RAAB
GERARD SINZDAK
  *(202) 514-0718*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7242*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC  20530*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1, the undersigned counsel of record certifies that the Certificate of Interested Persons contained in Appellee's Response Brief is complete, other than the following additions:

Academy of Florida Management Attorneys

Boynton, Brian M., U.S. Department of Justice, Civil Division

Fiore, Kristen M., Akerman LLP

Kline, Arlene K., Akerman, LLP

Miscimarra, Philip M., Morgan Lewis & Bockius LLP

National Retail Federation

Raab, Michael S., U.S. Department of Justice, Civil Division

Restaurant Law Center

Sinzdak, Gerard J., U.S. Department of Justice, Civil Division

U.S. Chamber of Commerce

As far as the undersigned is aware, no publicly traded corporation has an interest in the outcome of this appeal.

*/s/ Gerard Sinzdak*
Gerard Sinzdak
Attorney for the United States

Dated:  September 17, 2021

- i -

# TABLE OF CONTENTS

**Page**

CONCISE STATEMENT OF INTEREST OF AMICUS CURIAE............................1

STATEMENT OF THE ISSUE.........................................................................1

STATEMENT OF THE CASE..........................................................................2

    A. Statutory and Regulatory Background..................................................2

    B. District Court Proceedings.................................................................4

SUMMARY OF ARGUMENT.........................................................................5

ARGUMENT...............................................................................................7

THE DEPARTMENT OF LABOR'S REASONABLE INTERPRETATION OF
THE NATURAL DISASTER EXCEPTION'S CAUSATION REQUIREMENT
IS ENTITLED TO DEFERENCE........................................................................8

    A.    The statutory phrase "due to" is ambiguous ................................9

    B.    The Department of Labor's interpretation is at least reasonable.............17

CONCLUSION ..........................................................................................21

CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE
PROCEDURE 32(A)

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                          **Page(s)**

*Adams v. Director, OWCP,*
   886 F.2d 818 (6th Cir. 1989) ................................................................... 9, 10

*Alliance of Nonprofit Mailers v. Postal Regulatory Comm'n,*
   790 F.3d 186 (D.C. Cir. 2015) ................................................................. 9, 17

*Bostock v. Clayton County,*
   140 S. Ct. 1731 (2020) .......................................................................... 12, 15

*Burrage v. United States,*
   571 U.S. 204 (2014) ..................................................................................15

*Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co.,*
   295 F.3d 59 (1st Cir. 2002) ......................................................................12

*Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.,*
   15 F.3d 1275 (5th Cir. 1994) ................................................................. 6, 11

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
   467 U.S. 837 (1984) ....................................................................................7

*Crose v. Humana Ins. Co.,*
   823 F.3d 344 (5th Cir. 2016) ....................................................................10

*General Refractories Co. v. First State Ins. Co,*
   855 F.3d 152 (3d Cir. 2017) ......................................................................12

*Horton v. Reliance Standard Life Ins. Co.,*
   141 F.3d 1038 (11th Cir. 1998)..................................................................13

*Hotel Emps. & Rest. Emps. Int'l Union Local 54 v. Elsinore Shore Assocs.,*
   173 F.3d 175 (3d Cir. 1999) .............................................................10, 11, 12

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,*
   513 U.S. 527 (1995) ..................................................................................14

*Kimber v. Thiokol Corp.*,
    196 F.3d 1092 (10th Cir.1999) .................................................................... 9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ................................................................................... 13

*Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.*,
    505 F.2d 989 (2d Cir. 1974) ..................................................................... 10

*Paroline v. United States,*
    572 U.S. 434 (2014) ............................................................................. 13, 14

*Robers v. United States,*
    572 U.S. 639 (2014) ................................................................................... 15

*Samantar v. Yousuf,*
    560 U.S. 305 (2010) ................................................................................... 13

*San Antonio Sav. Ass'n v. Comm'r,*
    887 F.2d 577 (5th Cir. 1989) ..................................................................... 11

*Sides v. Macon Cty Greyhound Park, Inc.,*
    725 F.3d 1276 (11th Cir. 2013) ...................................................... 7, 8, 11, 17

*Smith v. BellSouth Telecomms., Inc.,*
    273 F.3d 1303 (11th Cir. 2001) .................................................................... 8

*United States v. George,*
    949 F.3d 1181 (9th Cir. 2020) ..................................................................... 12

*United States v. Monzel,*
    641 F.3d 528 (D.C. Cir. 2011) .................................................................... 15

*University of Texas Sw. Med. Ctr. v. Nassar,*
    570 U.S. 338 (2013) ................................................................................... 15

*U.S. Postal Serv. v. Postal Regulatory Comm'n,*
    640 F.3d 1263 (D.C. Cir. 2011) .................................................................... 9

**Statutes:**

Worker Adjustment and Retraining Notification Act (WARN Act):
  29 U.S.C. § 2101 *et seq.* ....................................................................1
    29 U.S.C. § 2102(a) ...........................................................2, 7, 11
    29 U.S.C. § 2102(b) ......................................................................2
    29 U.S.C. § 2102(b)(1) .................................................................2
    29 U.S.C. § 2102(b)(2)(A) ...............................................2, 18, 19
    29 U.S.C. § 2102(b)(2)(B) .............................. 1, 3, 5, 7, 9, 17
    29 U.S.C. § 2102(b)(3) ...........................................................3, 18
    29 U.S.C. § 2104(a)(1)-(2) ..........................................................2
    29 U.S.C. § 2104(a)(3) .................................................................2
    29 U.S.C. § 2107(a) .................................................................1, 3

**Regulations:**

20 C.F.R. § 639.1 ....................................................................17

20 C.F.R. § 639.1(a) ...............................................................11

20 C.F.R. § 639.9 .................................................................. 1, 3

20 C.F.R. § 639.9(b)(1) ...........................................................18

20 C.F.R. § 639.9(c) ................................................4, 7, 8, 17

20 C.F.R. § 639.9(c)(4) ...........................................................18

**Rule:**

Fed. R. App. P. 29(a)(2) ...........................................................1

**Legislative Materials:**

134 Cong. Rec 16,122 (1988)...................................................16

134 Cong. Rec. S8689 (daily ed. June 28, 1988) ....................... 16, 20

H.R. Rep. No. 100-285 (1987)..............................................17-18

**Other Authorities:**

*Due to*:

Merriam Webster Online Dictionary (Aug. 2021) ..........................................................14

Oxford English Dictionary Online (June 2021)............................................................14

The Oxford English Dictionary 1105 (2d ed. 1989) ....................................................14

## CONCISE STATEMENT OF INTEREST OF AMICUS CURIAE

The Secretary of Labor administers the Worker Adjustment and Retraining Notification Act (WARN Act), 29 U.S.C. § 2101 *et seq.* Congress vested the Secretary with broad authority to "prescribe such regulations as may be necessary to carry out" the WARN Act. *Id.* § 2107(a). Pursuant to that authority, the Secretary promulgated 20 C.F.R. § 639.9, which, among other things, identifies the circumstances under which the WARN Act's "natural disaster" exception, 29 U.S.C. § 2102(b)(2)(B), excuses an employer from providing employees with the full 60 days' notice of an impending mass layoff. The district court adopted an interpretation of the exception that is consistent with the Secretary's regulation. Defendants-appellants urge this Court to adopt an interpretation that is at odds with the Secretary's regulation. The Secretary has a strong interest in defending its regulations and in the correct interpretation and application of the WARN Act. The United States therefore files this amicus brief to aid the Court in its deliberations. *See* Fed. R. App. P. 29(a)(2).

## STATEMENT OF THE ISSUE

Whether, in accordance with the Secretary's regulation, the WARN Act's natural disaster exception applies where a mass layoff was the "direct result" of a natural disaster, or, as defendants urge, the exception applies where a natural disaster was merely a "but for" cause of a mass layoff.

# STATEMENT OF THE CASE

## A. Statutory and Regulatory Background

The WARN Act requires businesses that employ 100 or more employees to provide employees and state and local government authorities with 60 days' notice of a forthcoming "plant closing" or "mass layoff." *See* 29 U.S.C. § 2102(a). An employer who fails to give the required notice may be liable to each employee for back pay and benefits for each day that the required notice was not supplied, up to 60 days. *See id.* § 2104(a)(1)-(2). An employer is also subject to civil penalties for failing to provide local government officials with the required notice. *See id.* § 2104(a)(3).

The Act specifies three circumstances under which an employer may provide less than the required 60 days' notice *See* 29 U.S.C. § 2102(b). The first, known as the "faltering business" exception, *id.* § 2102(b)(1), is not relevant here. The second, known as the "unforeseeable business circumstances" exception, provides:

> An employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required.

*Id.* § 2102(b)(2)(A).

The third, known as the "natural disaster" exception, provides:

> No notice under this chapter shall be required if the plant closing or mass layoff is due to any form of natural disaster, such as a flood, earthquake, or the drought currently ravaging the farmlands of the United States.

2

*Id.* § 2102(b)(2)(B).  The Act further provides that "[a]n employer relying on this subsection [(setting out the three exceptions that allow reduction of the notice period)] shall give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period."  *Id.* § 2102(b)(3).

Congress tasked the Secretary of Labor with administering the WARN Act. Specifically, Congress authorized the Secretary of Labor to "prescribe such regulations as may be necessary to carry out" the Act.  29 U.S.C. § 2107(a).  Pursuant to that authority, the Secretary promulgated a regulation interpreting the Act's three exceptions to its notice requirement.  *See* 20 C.F.R. § 639.9.  With respect to the Act's natural disaster exception, the Department of Labor's regulation provides:

> The "natural disaster" exception in section 3(b)(2)(B) of WARN applies to plant closings and mass layoffs due to any form of a natural disaster.
>
> (1) Floods, earthquakes, droughts, storms, tidal waves or tsunamis and similar effects of nature are natural disasters under this provision.
>
> (2) To qualify for this exception, an employer must be able to demonstrate that its plant closing or mass layoff is a direct result of a natural disaster.
>
> (3) While a disaster may preclude full or any advance notice, such notice as is practicable, containing as much of the information required in § 639.7 as is available in the circumstances of the disaster still must be given, whether in advance or after the fact of an employment loss caused by a natural disaster.
>
> (4) Where a plant closing or mass layoff occurs as an indirect result of a natural disaster, the exception does not apply but the "unforeseeable business circumstance" exception described in paragraph (b) of this section may be applicable.

*Id.* § 639.9(c).

## B. District Court Proceedings

Plaintiff is a former employee of the rental-car company Enterprise Leasing Company of Orlando, LLC, a subsidiary of Enterprise Holdings, Inc. (collectively, Enterprise). Doc. 77, p. 2. In April 2020, Enterprise initiated a mass layoff at its Orlando and Tampa airport locations. *Id.* According to plaintiff, she and other affected employees were given little or no advance notice of the layoff. *Id.* Plaintiff filed a class action complaint alleging WARN Act violations. Enterprise moved to dismiss the complaint. *Id.* As relevant here, Enterprise argued that it was not required to provide notice of the layoff under the WARN Act's natural disaster exception, citing the COVID-19 pandemic as the relevant disaster. *Id.* at 10.

The district court denied Enterprise's motion. Doc. 77, pp. 10-12. The court assumed that the pandemic was a natural disaster. *Id.* at 10. Citing the Department of Labor's regulation, the court held that the natural disaster exception was nonetheless inapplicable because the complaint did not allege that the layoff was the "*direct result*" of the pandemic, as the exception required. *Id.* Instead, the complaint alleged a "more tenuous," indirect connection between the pandemic and the layoff: the pandemic led to a dramatic reduction in travel, which led to a reduction in demand for rental cars, which led to the layoff. *Id.* The court emphasized that this "isn't a situation where, for example, a factory was destroyed overnight by a massive flood." *Id.* at 11.

4

Although the court found the natural disaster exception inapplicable, it noted

that the "unforeseeable business circumstances" exception might apply.  Doc. 77, pp.

11, 12.  Because a factual dispute over the application of that exception existed, the

court denied Enterprise's motion to dismiss on that alternative ground.  *Id.* at 12.

Upon Enterprise's request, the district court certified for interlocutory review

its order denying Enterprise's motion to dismiss.  Doc. 77, pp. 12-17.  The court

found that a controlling question of law existed as to "causal standard" that "is

required to establish that a plant closing or mass layoff is 'due to any form of natural

disaster' under the WARN Act's natural disaster exception."  *Id.* at 15.

This Court subsequently granted Enterprise's petition for interlocutory review.

## SUMMARY OF ARGUMENT

With the goal of providing workers and state and local government with time

to prepare for a mass layoff, the WARN Act requires employers to provide at least 60

days' notice of an impending layoff.  The Act provides three circumscribed exceptions

to the 60-day notice requirement.  One such exception is when a mass layoff is "due

to" a natural disaster.  29 U.S.C. § 2102(b)(2)(B).  The Secretary of Labor promulgated

a regulation interpreting this natural disaster exception as applying where a layoff is

the "direct result" of a natural disaster.  Because the Secretary's interpretation is, at a

minimum, reasonable, it is entitled to deference.

In requiring that a mass layoff be the "direct result" of a natural disaster, the

Department of Labor's regulation comports with the text and purpose of the WARN

Act.  The Act's exceptions to its foundational 60-days' notice requirements are to be

"narrowly construed."  *Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't*

*Stores, Inc.*, 15 F.3d 1275, 1282 (5th Cir. 1994).  The Secretary's "direct result"

requirement appropriately cabins the reach of the natural disaster exception.  It

ensures that an employer cannot evade the Act's advance notice requirements simply

because a layoff has an attenuated connection to a natural disaster, while at the same

time providing relief to employers who are forced to close a plant or layoff a large

number of employees as a direct result of a natural disaster.

The Secretary's interpretation also follows the Act's text and structure.  In

specifying that "no notice" shall be required where a layoff is due to a natural disaster,

Congress understood the exception as applying where advance notice is infeasible as a

general matter.  The Secretary's interpretation accords with that intent.  Where a

natural disaster directly causes a layoff—such as where a flood destroys an employer's

place of business—advance notice of the layoff is not likely to be practicable.  Where

a natural disaster indirectly leads to a layoff—such as where a disaster causes a

reduction in demand for an employer's product—some amount of advance notice is

likely to be practicable.

The Secretary's interpretation also harmonizes the natural disaster exception

and the Act's unforeseeable business circumstances exception.  As the Department of

Labor's regulation expressly recognizes, the unforeseeable business circumstances

exception may apply where a natural disaster leads indirectly to a layoff.  By

interpreting the natural disaster exception to apply where a layoff is the direct result of a natural disaster, the Secretary ensured that the natural disaster exception works in concert with the unforeseeable business circumstances exception and does not nullify it in cases where an unforeseeable business circumstance, not a natural disaster, is the direct cause of a mass layoff.

## ARGUMENT

The WARN Act requires most employers to provide 60 days' notice of a forthcoming mass layoff or plant closure. *See* 29 U.S.C. § 2102(a). The Act provides an exception to that requirement where the "plant closing or mass layoff is due to any form of natural disaster." *Id.* § 2102(b)(2)(B). Pursuant to its congressionally delegated authority, the Department of Labor issued a regulation interpreting the ambiguous phrase "due to any form of a natural disaster" to require that the mass layoff or plant closure be the "direct result" of a natural disaster. 20 C.F.R. § 639.9(c). The Department of Labor's interpretation is consistent with the natural disaster exception's text, context, and purpose. The Secretary's interpretation is the most natural reading of the statute and is, at a minimum, a reasonable one. The regulation is therefore entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984). *See Sides v. Macon Cty Greyhound Park, Inc.*, 725 F.3d 1276, 1284 (11th Cir. 2013) ("Where there is statutory ambiguity we defer to the interpretation of the WARN Act by the agency charged with its implementation, the Department of Labor (DOL).").

7

### THE DEPARTMENT OF LABOR'S REASONABLE INTERPRETATION OF THE NATURAL DISASTER EXCEPTION'S CAUSATION REQUIREMENT IS ENTITLED TO DEFERENCE

To determine whether an agency's interpretation of a statute it is tasked with administering is entitled to deference, courts follow the familiar two-step framework set forth in *Chevron*. *See Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1303, 1307 (11th Cir. 2001). At step one, this Court asks "whether Congress has directly spoken to the precise question at issue." *Id.* If "the will of Congress is clear from the statute itself, [the Court's] inquiry ends." *Id.* If the statute is silent or ambiguous with respect to the specific issue, this Court "next ask[s] whether the agency's construction of the statute is reasonable." *Id.* If the agency's construction of an ambiguous statute is reasonable, a court must defer to it. *Sides*, 725 F.3d at 1284. A "court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Smith*, 273 F.3d at 1307.

The Secretary's regulation interpreting the natural disaster exception's causation requirement satisfies both criteria. The statutory phrase requiring that a mass layoff be "due to" a natural disaster is ambiguous, and the Secretary reasonably concluded that the natural disaster exception applies where a mass layoff is the "direct result" of a natural disaster, such as where a flood destroys an employer's plant. *See* 20 C.F.R. § 639.9(c). Accordingly, the regulation is entitled to deference. *See Sides*, 725 F.3d at 1284.

### A.    The statutory phrase "due to" is ambiguous.

In requiring that a mass layoff be "due to" a natural disaster in order for the natural disaster exception to apply, 29 U.S.C. § 2102(b)(2)(B), Congress did not unambiguously define the required causal connection between the layoff and the natural disaster.  To the contrary, as numerous courts have recognized,

> [t]he phrase "due to" is ambiguous. The words do not speak clearly and unambiguously for themselves.  The causal nexus of 'due to' has been given a broad variety of meanings in the law ranging from sole and proximate cause at one end of the spectrum to contributing cause at the other.

*U.S. Postal Serv. v. Postal Regulatory Comm'n*, 640 F.3d 1263, 1268 (D.C. Cir. 2011) (quoting *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1100 (10th Cir.1999)); *see also Adams v. Director, OWCP*, 886 F.2d 818, 821 (6th Cir.1989).  Because the scope of the natural disaster exception's "due to" causation standard is ambiguous, "Congress left it to the [Secretary] to determin[e] how closely" the connection between the natural disaster and the layoff must be to trigger the exception.  *Alliance of Nonprofit Mailers v. Postal Regulatory Comm'n*, 790 F.3d 186, 193 (D.C. Cir. 2015).  For the reasons explained *infra* Part B, the Secretary reasonably concluded that the layoff must be the "direct result" of the natural disaster.

Enterprise contends that the phrase "due to" unambiguously refers only to "but for" causation and does not incorporate a proximate cause requirement, such as the Secretary's "direct result" standard.  Enterprise Br. 11-26.  Enterprise cites no case in which a court of appeals has concluded that the phrase "due to" is

9

unambiguous and refers solely to "but for" causation.  Enterprise, in particular, fails to identify any such cases (let alone a uniform collection of cases) interpreting "due to" in the limited manner it proposes in the years predating the enactment of the WARN Act, such that Congress might be presumed to have adopted that construction.  Moreover, as noted above, numerous courts have recognized that the phrase "due to" is ambiguous.  *See supra* p. 9.  One court did so in a decision roughly contemporaneous with the enactment of the WARN Act, underscoring that phrase lacked a settled meaning during the relevant time period.  *See Adams*, 886 F.2d at 821.

In fact, in certain contexts, courts have "concluded that 'due to' should be read as *requiring* a proximate cause analysis."  *Crose v. Humana Ins. Co.*, 823 F.3d 344, 350 (5th Cir. 2016) (emphasis added); *see also Pan Am. World Airways, Inc. v. Aetna Cas. & Sur. Co.*, 505 F.2d 989, 1006 (2d Cir. 1974) (stating that the phrase "due to or resulting from" "clearly refers to . . . proximate cause").  Enterprise's contention that Congress understood the phrase "due to" as unambiguously requiring only "but for" causation cannot be squared with precedent.

Enterprise's interpretation of the natural disaster exception's causation requirement is also at odds with the exception's statutory context.  Enacted in "response to the extensive worker dislocation that occurred in the 1970s and 1980s," *Hotel Emps. & Rest. Emps. Int'l Union Local 54 v. Elsinore Shore Assocs.*, 173 F.3d 175, 182 (3d Cir. 1999), the WARN Act requires employers to provide workers, that state dislocated worker office, and the chief elected official of the relevant local

10

government with notice of an impending mass layoff or plant closing, 29 U.S.C.
§ 2102(a).  The Act is thus designed to ensure that workers have sufficient time "to
adjust to the prospective loss of employment, to seek and obtain alternative jobs and
. . . to enter skill training or retraining that will allow these workers to successfully
compete in the job market."  *Sides*, 725 F.3d at 1281 (quoting 20 C.F.R. § 639.1(a));
*Hotel Employees*, 173 F.3d at 182 ("The thrust of WARN is to give fair warning in
advance of prospective plant closings.").  The Act is likewise designed to provide state
and local government agencies with advance notice of layoff or plant closure so those
entities may timely prepare and initiate worker outreach and other support programs.
*See* 20 C.F.R. § 639.1(a).[1]  Because the WARN Act's exceptions to its notice
requirements run counter to the Act's fundamental design, they are "narrowly
construed."  *Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.*,
15 F.3d 1275, 1282 (5th Cir. 1994); *see also San Antonio Sav. Ass'n v. Comm'r*, 887 F.2d
577, 586 (5th Cir. 1989) (noting the "general principle of narrow construction of
exceptions").

Enterprise's interpretation, by contrast, would improperly create an exception
to the Act's notice requirement that is potentially expansive in scope.  The "but-for"

---

[1] Notice to the state dislocated worker unit and the local government allows
those bodies to prepare services for the soon-to-be laid off workers.  Those services,
which are funded in part by the Department of Labor, include rapid response
programs, job training, job search support, and career counseling.  *See*
https://www.dol.gov/agencies/eta/workforce-investment/dislocated-workers

causation standard "can be a sweeping standard." *Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020); *see also United States v. George*, 949 F.3d 1181, 1187 (9th Cir. 2020) ("But-for causation is a relatively undemanding standard."). "'[B]ut for' events can be very remote," *Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co.*, 295 F.3d 59, 65 (1st Cir. 2002), and may contribute only modestly to the end result, *General Refractories Co. v. First State Ins.* Co, 855 F.3d 152, 161 (3d Cir. 2017) ("'But for' causation 'is a *de minimis* standard of causation, under which even the most remote and insignificant force may be considered the cause of an occurrence.'"). Thus, if "but for" causation is all the WARN Act's natural disaster exception requires, an employer may be excused from providing 60 days' advance notice of a layoff even in circumstances where the relevant natural disaster occurred months earlier, its effects on the employer's business are modest and were known to the employer for a significant period of time, and the employer could readily have provided notice of the forthcoming layoff. Such a potentially sweeping loophole is inconsistent with the statute's text and purpose, and could not have been what Congress intended. *See, e.g.*, *Hotel Employees*, 173 F.3d at 182 (concluding that government-ordered plant closings do not exempt employers from the WARN Act's notice requirements because, among other things, Congress intended the WARN Act to apply whenever an employer knows of an impending layoff, regardless of its cause).

Enterprise's interpretation of the exception's causation requirement is also at odds with other principles of statutory interpretation. Congress is "understood to

legislate against a background of common-law . . . principles." *Samantar v. Yousuf*, 560 U.S. 305, 320-21 & n.13 (2010). "Thus, where a common-law principle is well established[,] . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1041 (11th Cir. 1998); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014) ("Congress, we assume, is familiar with the common-law rule and does not mean to displace it *sub silentio*.").

The "requirement of proximate causation" is a "venerable" and "well established" common-law principle that Congress is presumed to incorporate into causation requirements. *Lexmark*, 572 U.S. at 132; *see also id.* (citing cases in which the Court has presumed that Congress intended to incorporate a proximate-cause requirement); *Paroline v. United States,* 572 U.S. 434, 446 (2014) ("Given proximate cause's traditional role in causation analysis, this Court has more than once found a proximate-cause requirement built into a statute that did not expressly impose one.") (citing cases). Congress's use of the general phrase "due to" in describing the natural disaster exception's causal component does not in any way indicate Congress's intent to negate the traditional common-law proximate-cause requirement. Far from running contrary to Congress's statutory purpose in enacting the WARN Act, a proximate-cause requirement furthers Congress's intent by appropriately cabining the circumstances in which an employer may evade the Act's 60-day notice requirement.

13

Enterprise gets the law backwards when it suggests that Congress could have incorporated a proximate causation requirement by including phrases like "directly" or "primarily" in the statutory text.  Enterprise Br. 18-19.  Under settled principles of statutory construction, Congress is presumed to adopt proximate causation unless it states otherwise.  It is not presumed to exclude proximate causation unless it expressly adopts it.  As the Supreme Court has emphasized, it regularly finds a "proximate-cause requirement built into . . . statute[s] that did not expressly impose one."  *Paroline*, 572 U.S. at 446.

In asserting that the statutory phrase "due to" incorporates only "but for" causation, Enterprise notes that "due to" is synonymous with "because of" and "resulting from" and then cites cases interpreting "because of" and "resulting from" to incorporate "but for" causation.  Enterprise Br. 12-15.  Enterprise's argument is unavailing.  Dictionary definitions of "due to" do not clarify its ambiguity.  For example, "due to" is synonymous not only with "because of" and "results from," but also with phrases such as "caused by" and "as a result of."  *See, e.g.*, *Due to*, The Oxford English Dictionary 1105 (2d ed. 1989) ("due to" means "caused by"); *Due to*, Oxford English Dictionary Online (June 2021) ("caused by"; "as a result of"); *Due to*, Merriam Webster Online Dictionary (Aug. 2021) ("as a result of").  Courts have regularly interpreted such phrases as incorporating proximate causation.  *See, e.g.*, *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 536 (1995) ("The Act uses the phrase 'caused by,' which more than one Court of Appeals has read as

14

requiring what tort law has traditionally called 'proximate causation.'"); *Robers v. United States*, 572 U.S. 639, 645 (2014) ("as a result of" denotes proximate cause); *United States v. Monzel*, 641 F.3d 528, 536 (D.C. Cir. 2011) ("By defining 'victim' as a person harmed 'as a result of' the defendant's offense, the statute invokes the standard rule that a defendant is liable only for harms that he proximately caused."); *see also* Enterprise Br. 25 (conceding that "caused by" "refers to proximate, not but-for, causation"). Enterprise's emphasis on the fact that "due to" is synonymous with "as a result of" thus, if anything, undermines its argument that "due to" does not incorporate proximate causation. *See* Enterprise Br. 15-16.

Enterprise also over-reads the cases that have concluded that the phrases "because of" and "results from" incorporate "but for" causation. While those cases stand for the proposition that "because of" or "results from" incorporate the traditional "but for" causation requirement, they did not hold that "because of" necessarily excludes proximate causation, "but for" causation's traditional companion. *See Burrage v. United States*, 571 U.S. 204, 211 (2014) ("The law has long considered causation a hybrid concept, consisting of two constituent parts: actual [or 'but-for'] cause and legal [or 'proximate'] cause."). In *Burrage*, for example, the Supreme Court expressly declined to reach the question whether the relevant statute imposed a proximate cause requirement in addition to a "but for" requirement. 571 U.S. at 210. In *Bostock*, 140 S. Ct. at 1739, and *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013), the Supreme Court similarly addressed only the question whether

15

the relevant statute incorporated a "but for" causation requirement.  Neither decision

mentions proximate causation, let alone addresses the question whether Congress

intentionally overrode the traditional proximate cause requirement.

Finally, Enterprise argues that it is significant that Congress considered a

proposed version of the natural disaster exception that would have described the

exception as applying when a layoff is "due, *directly or indirectly*, to any form of natural

disaster," but ultimately enacted the exception without the "directly or indirectly"

language.  Enterprise Br. 36-37 (quoting 134 Cong. Rec 16,122-23 (1988)).  The Act's

legislative history suggests the language may have been dropped due to confusion

over the meaning of the terms "directly" and "indirectly."  *See, e.g.*, 134 Cong. Rec.

S8689 (daily ed. June 28, 1988) (remarks of Sen. Dole) (explaining that the language

was removed because "there was some question what 'directly' means and what

'indirectly' means"); *id.* at S8687 (remarks of Sen. Metzenbaum) (objecting to the

inclusion of "indirectly" because " 'indirectly' is such an amorphous kind of term you

cannot tie it down"); *id.* at S8689 (remarks of Sen. Dole) (agreeing that the removal of

"indirectly" was a "good" suggestion given its amorphous character).  The most

logical inference to be drawn from the failed amendment is that Congress chose the

ambiguous phrase "due to" on the understanding that the Secretary of Labor and

courts would establish the contours of the exception's causation requirement.

**B.    The Department of Labor's interpretation is at least reasonable.**

The Secretary of Labor reasonably interpreted the WARN Act's natural disaster exception as applying where a mass layoff or plant closure is the "direct result" of a natural disaster. *See* 20 C.F.R. § 639.9(c). The Secretary's interpretation is consistent with the Act's "central focus," *Alliance of Nonprofit Mailers*, 790 F.3d at 193, on ensuring that workers and state and local governments receive adequate notice of a forthcoming mass layoff, so that they may prepare for that eventuality, *see Sides*, 725 F.3d at 1281; 20 C.F.R. § 639.1. By requiring a direct connection between the natural disaster and the mass layoff, the Secretary's interpretation ensures that the exception will not permit employers to rely on the lingering or remote effects of a natural disaster to evade the WARN Act's notice requirements where notice would have been practicable. At the same time, it provides relief to employers where a natural disaster has a direct and immediate adverse impact on an employer's business, such that an employer had to immediately shut its plant or layoff many of its employees.

The Department of Labor's regulation also accords with the statute's text. The WARN Act states that "[n]o notice . . . shall be required" where a mass layoff is due to a natural disaster. 29 U.S.C. § 2102(b)(2)(B). That Congress specified that "no notice" is required under the natural disaster exception indicates that Congress understood the exception as applying in circumstances where supplying advance notice of a mass layoff or plant closure is likely to be impracticable. *See* H.R. Rep. No.

17

100-285, at 34 (1987) (suggesting that a precursor to the natural disaster exception covered situations where notice was "impossible").

The regulation's "direct result" requirement is consistent with that congressional intent. Where a layoff results directly from a natural disaster, such as where a natural disaster destroys the employer's factory or place of business in a short period of time, advance notice of a layoff is likely to be impracticable. Conversely, where a natural disaster only indirectly results in a layoff—such as where a natural disaster reduces the demand for an employer's product, eventually leading to a layoff—some amount of notice is likely to be feasible.[2]

The Secretary's interpretation also harmonizes the natural disaster exception with the WARN Act's unforeseeable business circumstances exception. As the Department's regulation recognizes, the Act's unforeseeable business circumstances exception, 29 U.S.C. § 2102(b)(2)(A), covers situations where a natural disaster indirectly causes a layoff by, for example, causing "an unanticipated and dramatic major economic downturn" or a "sudden, dramatic, and unexpected" loss of business for the employer. 20 C.F.R. § 639.9(b)(1); *see also id.* § 639.9(c)(4) (emphasizing that "[w]here a plant closing or mass layoff occurs as an indirect result of a natural disaster, . . . the 'unforeseeable business circumstance' exception . . . may be applicable"). By

---

[2] In 29 U.S.C. § 2102(b)(3), Congress required employers "relying on" any of the Act's three exceptions, including the natural disaster exception, to "give as much notice as is practicable." Ambiguity therefore exists over whether an employer must provide notice of a layoff when relying on the natural disaster exception.

requiring that a mass layoff be the "direct result" of a natural disaster, the Secretary ensured that the natural disaster and unforeseeable business circumstances exceptions complement one another and that the unforeseeable business circumstances exception is the properly invoked exception when an unforeseeable business circumstance (such as an unexpected and sudden drop in demand for an employer's services) causes a mass layoff.  In other words, the Secretary's interpretation assures that the natural disaster exception does not extend so far that the unforeseeable business circumstances exception is lost whenever a layoff can be traced in some way to a natural disaster.

Differences in the text of the two exceptions lend further support to the Secretary's reading of the interplay between the two.  As Enterprise notes (Enterprise Br. 25), Congress used the phrase "caused by" in describing the unforeseeable business circumstances exception's causation standard.  *See* 29 U.S.C. § 2102(b)(2)(A).  Enterprise then asserts that the phrase "caused by" imposes a narrower, more strict causation standard than "due to."  *See* Enterprise Br. 25.  The opposite conclusion, however, is far more plausible in context.  As explained above, Congress understood the natural disaster exception as applying in a narrow range of circumstances—*i.e.*, where advance notice is generally not practicable.  *See supra* pp. 17-18.  The Secretary thus sensibly read "due to" as requiring that a layoff be the "direct result" of a natural disaster, while recognizing that a layoff indirectly caused by a natural disaster might be covered by the broader unforeseeable business circumstances exception.

19

Although this Court need not resort to the natural disaster exception's limited legislative history, that history also lends support to the Secretary's interpretation of the exception's causation requirement. The natural disaster exception was added to the WARN Act during a Senate floor debate. *See* 134 Cong. Rec. at S8686–89. As described above, a proposed version of the exception provided that it applied where a layoff was "due, directly or indirectly, to" a natural disaster. *See id.* The WARN Act's primary sponsor, Senator Metzenbaum, objected to the word "indirectly," deeming it too "amorphous" and likely to sweep too broadly. *See id.* at S8687. Ultimately, the Senate agreed to include the amendment without the "directly or indirectly" modifier. Senator Metzenbaum made clear, however, that the exception as enacted was not intended to apply where "notice can be given." *Id.* at S8687. He further emphasized that the exception did not provide "carte blanche" to employers to evade the Act's notice requirements merely because a drought or other natural disaster had "some impact" on the employer's business. *See id.* For the reasons explained above, the Department's "direct result" standard comports with that understanding of the exception, as it limits the exception's reach to situations where a natural disaster has a direct impact on an employer's business and where advance notice of a layoff is likely infeasible.

* * *

The district court correctly concluded, consistent with the Secretary's regulation, that the WARN Act's natural disaster exception applies where a mass

layoff is the "direct result" of a natural disaster.  Doc. 77, pp. 10-11.  The district

court further concluded that plaintiff's complaint alleges that the layoff was the direct

result of a sudden drop in demand for Enterprise's services and was only an indirect

result of the pandemic.  The district court's analysis accords with the Secretary's

regulation.  Its judgment should be affirmed.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be

affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Acting Assistant Attorney General*

/s/ Gerard Sinzdak
MICHAEL S. RAAB
GERARD SINZDAK
  *(202) 514-0718*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7252*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, NW*
  *Washington, DC  20530*

SEPTEMBER 2021

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

Pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, I hereby certify that the foregoing brief was prepared using Microsoft Word 2016 and complies with the type and volume limitations set forth in Rule 32 of the Federal Rules of Appellate Procedure. I further certify that the font used is 14 point Garamond, for text and footnotes, and that the computerized word count for the foregoing brief (excluding exempt material) is 5,227 words.

I further certify that 1) all required privacy redactions have been made; 2) the electronic submission will be an exact copy of the paper copy; and 3) the document is free from viruses and has been scanned by the current version of Symantec Endpoint Protection.

/s/ Gerard Sinzdak
GERARD SINZDAK

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2021, I electronically filed the foregoing

brief with the Clerk of the Court for the United States Court of Appeals for the Fifth

Circuit by using the appellate CM/ECF system. I also certify that I will file paper

copies with the Court, via Federal Express overnight delivery, when the court requests

them.

The participants in the case are registered CM/ECF users and service will be

accomplished by the appellate CM/ECF system.

/s/ Gerard Sinzdak
GERARD SINZDAK