## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| ART VAN FURNITURE, LLC., *et al.,*[1] | Case No. 20-10553 (CSS) |
| Debtors. | Jointly Administered |
| TODD STEWART and JENNIFER SAWLE on behalf of themselves and all others similarly situated, | Adv. Pro. No. 20-50548 (CSS) |
| Plaintiffs, | |
| v. | |
| ART VAN FURNITURE, LLC, et al., | |
| Debtors. | |

## PLAINTIFFS' RESPONSE
## TO TRUSTEE'S STATEMENT OF UNDISPUTED FACTS

Michael J. Joyce (No. 4563)
**JOYCE, LLC**
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302)-388-1944
Email: mjoyce@mjlawoffices.com

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

OF COUNSEL:

René S. Roupinian (*admitted pro hac vice*)
Jack A. Raisner (*admitted pro hac vice*)
**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

*Attorneys for Plaintiffs and the putative class*

Plaintiffs Todd Stewart and Jennifer Sawle, on behalf of themselves and all others similarly situated ("Plaintiffs"), submit this response to the Statement of Undisputed Facts in Support of Chapter 7 Trustee's Motion for Summary Judgment ("SOF") (D.I. 45). Plaintiffs respond to the Trustee's SOF with the information they currently have and reserve the right to submit an amended response, as the parties have not completed fact discovery and the evidentiary record is incomplete.

1. **Trustee's SOF 1:** The Debtors filed the Chapter 11 Cases with the intention of winding down their affairs by liquidating their inventory through store closing sales (the "GOB Sales"), paying down their secured debt, and using any remaining proceeds of their GOB Sales to wind-down their operations. (*Declaration of David Ladd, Executive Vice President and Chief Financial Officer of Art Van Furniture, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Bankr. Doc. 12] ("Ladd Declaration") (attached as **Exhibit A** to Sandler Declaration) at ¶¶ 6 & 18.)

> **Plaintiffs' response: DISPUTED IN PART. Undisputed that Defendants filed for Chapter 11 bankruptcy. Disputed as to the characterization of the Defendants' intentions when they filed for Chapter 11 bankruptcy. The Ladd Declaration speaks for itself. Pursuant to Fed. R. Civ. P. 56(d)(1) and (2), Plaintiffs submit that because minimal formal discovery and no formal document production has taken place in this litigation, they are unable to present facts essential to justify their opposition to Defendants' Motion to the extent Defendants rely on this fact, and the Motion should therefore be denied or deferred until discovery has been taken.**

2. **Trustee's SOF 2:** The GOB Sales, the Levin Sale, and other actions taken by the Debtors in the Chapter 11 Cases (discussed below) were all part of the orderly liquidation and wind-down planned by the Debtors prior to and as of the Petition Date (the "Planned Liquidation Process") in order to maximize the liquidation value of the estates' assets and the recoveries for the Debtors' creditors. (Ladd Declaration at ¶¶ 6, 16, 17, 18, 19, 20, 40, 41, 42 & 43.)

> **Plaintiffs' response: DISPUTED IN PART. Undisputed that the Defendants planned to conduct the GOB Sales and the Levin Sale at the time of the Chapter 11 filing. Disputed as to their purpose and whether "other actions taken by the Debtors" were part of any plan, as those actions are not identified. The Ladd Declaration speaks for itself. Pursuant to Fed. R. Civ. P. 56(d)(1) and (2), Plaintiffs submit that because minimal formal discovery and no formal document production has taken place in this litigation, they are unable to present facts essential to justify their opposition to Defendants' Motion to the extent Defendants rely on this fact, and the Motion should therefore be denied or deferred until discovery has been taken.**

3.      **Trustee's SOF 3:** In the months leading up to the Petition Date, Art Van was struggling under the weight of poor sales and $208.5 million in secured debt encumbering substantially all of its assets: (i) $33.5 million in an asset-backed loan ("ABL Loan") from Wells Fargo Bank ("Wells Fargo") and (ii) a $175 million term loan (the "Term Loan") from FS KKR Capital Corp. (the "Term Lenders" and together with Wells Fargo, the "Secured Lenders"). (Ladd Declaration at ¶¶ 7, 8, 13, 14, 16, 17, 18, 31-36.)

      **Plaintiffs' response: UNDISPUTED.**

4.      **Trustee's SOF 4:** Art Van had defaulted on the ABL Loan on February 5, 2020 and had only been able to obtain a forbearance from Wells Fargo through February 28, 2020, giving it 23 days to find a buyer, an investor or a means of recapitalizing the business. As a condition to the forbearance, Wells Fargo insisted that the Debtors begin to prepare for going-out-of-business (GOB) sales. (Ladd Declaration at ¶¶ 14, 36.)

      **Plaintiffs' response: DISPUTED IN PART. Undisputed that the Defendants defaulted on the ABL Loan. Disputed as to the characterization that Wells Fargo "insisted" on the GOB sales. The Ladd Declaration speaks for itself. Pursuant to Fed. R. Civ. P. 56(d)(1) and (2), Plaintiffs submit that because minimal formal discovery and no formal document production has taken place in this litigation, they are unable to present facts essential to justify their opposition to Defendants' Motion to the extent Defendants rely on this fact, and the Motion should therefore be denied or deferred until discovery has been taken.**

5.      **Trustee's SOF 5:** In spite of the Debtors' efforts over the next 23 days in February 2020, by February 28, 2020, the Debtors were unable to secure financing or attract a going concern buyer. (Transcript of March 10, 2020 hearing (attached as **Exhibit B** to Sandler Declaration) at p. 55, line 25 to p. 57, line 20; Ladd Declaration at ¶¶ 14-15.) The forbearance period ended on that date, and the Debtors had no alternative but to pursue an orderly wind-down of their operations and liquidation of their assets. (Ladd Declaration at ¶¶ 16-18.) To that end, prior to the Petition Date, the Debtors negotiated a wind-down budget with Wells Fargo ("Wind-Down Budget"), hired a liquidator, and announced publicly that after decades in business they were going out of business. (Ladd Declaration at ¶¶ 16-18; *Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Bankr. Doc. 93] ("Interim CC Order") (attached as **Exhibit C** to Sandler Declaration) at 12-13; "Art Van Furniture to close all stores, including 24 in Illinois," *Chicago Tribune*, March 5, 2020, available at https://www.chicagotribune.com/business/ct-biz-art-van-shutting-down-20200305-2efw2ukfk5g2dfpzgooebjv7ry-story.html) (attached as **Exhibit D** to Sandler Declaration).)

      **Plaintiffs' response: DISPUTED IN PART. Undisputed that the Defendants did not secure financing before the end of the forbearance period, that they negotiated a wind-down budget with Wells Fargo, and announced they were going out of business. Disputed as to the characterization that these events occurred "in spite of**

**Debtors' efforts" and that they had "no alternative" but to take these actions. Pursuant to Fed. R. Civ. P. 56(d)(1) and (2), Plaintiffs submit that because minimal formal discovery and no formal document production has taken place in this litigation, they are unable to present facts essential to justify their opposition to Defendants' Motion to the extent Defendants rely on this fact, and the Motion should therefore be denied or deferred until discovery has been taken.**

6.      **Trustee's SOF 6:** As part of the Planned Liquidation Process, on March 4, 2020, SLI entered into a letter agreement (the "Levin LOI") pursuant to which it agreed to sell 44 stores (most of which were in Pennsylvania), two distribution centers and certain other assets (the "SLI Assets") to Robert Levin (the "Levin Sale"). The Levin Sale was expected to be approved in bankruptcy and consummated in or about early April 2020. The Debtors believed that the buyer would keep the 44 stores operating and thereby preserve approximately 1,000 jobs. (Ladd Declaration at ¶¶ 19-20 & 40-42.)

> **Plaintiffs' response: DISPUTED IN PART.  Undisputed that the Defendants entered into the LOI.  Disputed as to the characterization of this as part of a "Planned Liquidation Process" and as to Defendants' expectations and beliefs about the Levin Sale. Pursuant to Fed. R. Civ. P. 56(d)(1) and (2), Plaintiffs submit that because minimal formal discovery and no formal document production has taken place in this litigation, they are unable to present facts essential to justify their opposition to Defendants' Motion to the extent Defendants rely on this fact, and the Motion should therefore be denied or deferred until discovery has been taken.**

7.      **Trustee's SOF 7:** The Levin LOI contemplated that the Levin Sale stores would continue briefly operating pending the closing of the Levin Sale. (Ladd Declaration at ¶¶ 40-41; *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. Sections 105, 361, 364(c) and 364(d); and (II) Granting Related Relief* [Bankr. Doc. 49] ("Levin DIP Motion") (attached as **Exhibit E** to Sandler Declaration).) Because the Debtors had no money to operate these stores (they only had the money that Wells Fargo had agreed to let them use to conduct the GOB Sales), Robert Levin agreed to extend $10 million of debtor-in-possession (DIP) financing to SLI (the "Levin DIP Loan") to the Debtors to facilitate the Levin Sale, which $10 million then would be repaid with and deducted from the sales proceeds of the Levin Sale. (Levin DIP Motion; *Interim Order* on Levin DIP Motion [Bankr. Doc. 137] ("Interim Levin DIP Order") (attached as **Exhibit F** to Sandler Declaration).)

> **Plaintiffs' response: DISPUTED IN PART.  Undisputed that the LOI contemplated continued operations and that Defendants received the Levin DIP Loan.  Disputed as to the characterization of what money Defendants did or did not have.  Pursuant to Fed. R. Civ. P. 56(d)(1) and (2), Plaintiffs submit that because minimal formal discovery and no formal document production has taken place in this litigation, they are unable to present facts essential to justify their opposition to Defendants' Motion to the extent Defendants rely on this fact, and the Motion should therefore be denied or deferred until discovery has been taken.**

**8.     Trustee's SOF 8:** On March 5, 2020, Art Van publicly announced that it was liquidating and going out of business. (Art Van GOB Press Release (attached as **Exhibit D** to Sandler Declaration).) Plaintiffs have acknowledged that the Debtors began their liquidation plan at this time. (Complaint (attached as **Exhibit Y** to Sandler Declaration) at ¶ 25 ("… Debtors began to execute on its planned liquidation.").)

> **Plaintiffs' response: DISPUTED IN PART. Undisputed that the Defendants issued the referenced press release and that Plaintiffs filed the referenced Complaint and allegation. These documents speak for themselves. Pursuant to Fed. R. Civ. P. 56(d)(1) and (2), Plaintiffs submit that because minimal formal discovery and no formal document production has taken place in this litigation, they are unable to present facts essential to justify their opposition to Defendants' Motion to the extent Defendants rely on this fact, and the Motion should therefore be denied or deferred until discovery has been taken.**

**9.     Trustee's SOF 9:** On March 5, 2020, as part of its Planned Liquidation Process, although not required, AVF issued a WARN Act notice to approximately 1,400 potentially "affected employees" who worked in or reported to seven facilities in Michigan, two facilities in Illinois and one in Pennsylvania, which notice provided:

> Art Van Furniture, LLC (the "Company") has made the difficult decision to winddown its operations, which will include the closure of its facilities located at 6500 E 14 Mile Rd, Warren, MI, 48092; 27775 Novi Rd, Novi, MI, 48377; 4375 28th St SE, Grand Rapids, MI,49321; 4095 E Court St, Burton, MI, 48509; 14055 Hall Rd, Shelby Township, MI, 48315; 8748 W Saginaw Hwy, Lansing, MI, 48917; and 4273 Alpine Ave Nw Ste B, Alpine, MI, 49321, and will be permanently terminating the employment of all employees at these locations.

> The Company submits this notice to you to satisfy any obligation that may exist under the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act"). If no obligations exist, this notice is being provided to you voluntarily.

> All terminations of employment will be permanent and you will not have bumping rights for other positions (i.e., you will not have the right to displace employees with less seniority). While an exact date has not yet been established for these closures, it is anticipated that your employment with the Company will terminate on May 5, 2020 or a date within 14 days thereafter which may be provided to you by the Company (your "Termination Date"). Nothing in this letter alters your at will employment status with the Company.

> You will be required to work through your Termination Date, following which date you will not be required to report to work or provide any services to the

Company.

(WARN Act notice issued by AVF on March 5, 2020 (attached as **Exhibit G** to Sandler Declaration).)

> **Plaintiffs' response: DISPUTED IN PART.  Undisputed that the Defendants gave this notice to some of its employees on March 5.  Disputed as to the characterization of the notice as part of a liquidation plan, and as to the characterization of the notice as "not required." Pursuant to Fed. R. Civ. P. 56(d)(1) and (2), Plaintiffs submit that because minimal formal discovery and no formal document production has taken place in this litigation, they are unable to present facts essential to justify their opposition to Defendants' Motion to the extent Defendants rely on this fact, and the Motion should therefore be denied or deferred until discovery has been taken.**

10.    **Trustee's SOF 10:**  The Debtors' target date to end the GOB Sales was the end of April 2020 (Ladd Declaration at ¶ 18). The GOB Sales commenced as expected, and went well at first: From March 5, 2020 through March 8, 2020, deposits from inventory sales were in excess of $23 million. (*Corrected Motion for Entry of Order Converting Their Chapter 11 Cases to Cases Under Chapter 7* [Bankr. Doc. 252] (the "Conversion Motion") (attached as **Exhibit H** to Sandler Declaration) at ¶ 22.)

> **Plaintiffs' response: DISPUTED IN PART.  Undisputed that the GOB sales generated deposits in excess of $23 million.  Disputed as to the characterization of the "target date" for the GOB sales and the characterization that the sales "went well at first."  Pursuant to Fed. R. Civ. P. 56(d)(1) and (2), Plaintiffs submit that because minimal formal discovery and no formal document production has taken place in this litigation, they are unable to present facts essential to justify their opposition to Defendants' Motion to the extent Defendants rely on this fact, and the Motion should therefore be denied or deferred until discovery has been taken.**

11.    **Trustee's SOF 11:** On March 8, 2020 (the "Petition Date"), the Debtors filed their Chapter 11 Cases and filed "first day motions" to obtain approval of, *inter alia*, the Wind-Down Budget, the Levin DIP, and GOB Sales and the Consulting Agreement with the Liquidator. (*Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Bankr. Doc. 5] (attached as **Exhibit I** to Sandler Declaration); Levin DIP Motion; Interim Levin DIP Order; *Debtors' Motion for Entry of Interim and Final Orders (I) Approving Procedures for Store Closing Sales, (II) Authorizing Customary Bonuses to Employees of Closing Stores; (III) Authorizing Assumption of Consulting Agreement and (IV) Granting Related Relief* [Bankr. Doc. 52] (attached as **Exhibit J** to Sandler Declaration).)

> **Plaintiffs' response: Undisputed.**

12.    **Trustee's SOF 12:** While there was an extensive discussion of the GOB Sales at the first day hearing held on March 10, 2020, there was no discussion by the Court and other parties of COVID-19 and the effects thereof, including any potential government-mandated shut downs and extensive business restrictions. (Transcript from March 10, 2020 Hearing (attached as **Exhibit B** to Sandler Declaration).)

**Plaintiffs' response: Undisputed that the hearing took place, the transcript of which speaks for itself. Disputed as to the characterization of the GOB discussion as "extensive." Pursuant to Fed. R. Civ. P. 56(d)(1) and (2), Plaintiffs submit that because minimal formal discovery and no formal document production has taken place in this litigation, they are unable to present facts essential to justify their opposition to Defendants' Motion to the extent Defendants rely on this fact, and the Motion should therefore be denied or deferred until discovery has been taken.**

13.    **Trustee's SOF 13:** On March 11, 2020, the Bankruptcy Court entered an interim cash collateral order, authorizing the Debtors to use cash collateral in accordance with the Wind-Down Budget until April 7, 2020 (unless terminated earlier due to default or entry of a final order) to conduct the GOB Sales. The Wind-Down Budget assumed that the GOB Sales would continue unabated through April 30, 2020, and provided that the "the failure by the Debtors to continue sales of the Assets in accordance with the Consulting Agreement and to assume the Consulting Agreement on a timely basis" is a default, and thus, the Debtors continued their ongoing GOB sales. (Interim CC Order (attached as **Exhibit C** to Sandler Declaration) at pp. 34-35.)

**Plaintiffs' response: DISPUTED IN PART. Undisputed that on March 11, 2020, the Bankruptcy Court entered the interim cash collateral order. Disputed as to the characterization of what the wind-down budget "assumed" and as to the characterization that the Defendants "thus" continued the GOB sales. Pursuant to Fed. R. Civ. P. 56(d)(1) and (2), Plaintiffs submit that because minimal formal discovery and no formal document production has taken place in this litigation, they are unable to present facts essential to justify their opposition to Defendants' Motion to the extent Defendants rely on this fact, and the Motion should therefore be denied or deferred until discovery has been taken.**

14.    **Trustee's SOF 14:** At the continued hearing on first day motions held on March 12, 2020, the Bankruptcy Court and the U.S. Trustee expressed concerns about the fee in the Liquidator's Consulting Agreement and continued that portion of the Debtors' GOB sale motion to March 20, 2020, but other than comments by the Bankruptcy Court at the beginning of the hearing, there was no mention by the parties at the hearing of COVID-19 or the possibility that the GOB Sales might not be able to continue. (Transcript of March 12, 2020 Hearing (attached as **Exhibit K** to Sandler Declaration) at p. 5, lines 5-7.)

**Plaintiffs' response: DISPUTED IN PART. Undisputed that the March 12 hearing took place and that the referenced concerns were expressed. Disputed that the parties did not mention COVID-19. The impending pandemic was alluded to**

various times.  Counsel stated they were working "under less than ideal circumstances these days." (p.5, lines 12-14.)  The Court questioned if "we'll ever be allowed to be in the same room ever again after today." (p.26, lines 21-22).  Pursuant to Fed. R. Civ. P. 56(d)(1) and (2), Plaintiffs submit that because minimal formal discovery and no formal document production has taken place in this litigation, they are unable to present facts essential to justify their opposition to Defendants' Motion to the extent Defendants rely on this fact, and the Motion should therefore be denied or deferred until discovery has been taken.

15.    **Trustee's SOF 15:**  The unprecedented, extraordinary circumstances caused by the COVID-19 pandemic confronting the Debtors during the period March 8, 2020 (the Petition Date) and March 19, 2020 (the day of the COVID WARN Notice) are a matter of public record. On March 13, 2020, then-President Donald Trump declared a national emergency. (*Pres. Donald J. Trump, Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak,* dated March 13, 2020 (85 F.R. 15337 (March 13, 2020)), available at https://www.govinfo.gov/content/pkg/FR-2020-03-18/pdf/2020-05794.pdf (attached as **Exhibit L** to Sandler Declaration).)

    **Plaintiffs' response: Undisputed that the COVID-19 pandemic is a matter of public record and that on March 13, 2020, then-President Donald Trump declared a national emergency.  Disputed as to the characterization of the circumstances that confronted Defendants specifically between March 8 and March 19.  Pursuant to Fed. R. Civ. P. 56(d)(1) and (2), Plaintiffs submit that because minimal formal discovery and no formal document production has taken place in this litigation, they are unable to present facts essential to justify their opposition to Defendants' Motion to the extent Defendants rely on this fact, and the Motion should therefore be denied or deferred until discovery has been taken.**

16.    **Trustee's SOF 16:**  By March 14, 2020, Governor Tom Wolf of Pennsylvania, where 25 of the Debtors' stores and two of their distribution centers are located, had issued guidance urging all non-essential businesses to close. (*Wolf Administration Issues Guidance to Non-Essential Businesses as Part of COVID-19 Mitigation Efforts*, March 14, 2020, available at https://www.governor.pa.gov/wpcontent/    uploads/2020/03/20200319-TWW-COVID-19-business-closure-order.pdf (attached as **Exhibit M** to Sandler Declaration).) Two days later, Governor Wolf repeated and amplified that guidance, declaring: "The Wolf Administration is relying on businesses to act now before the governor or the Secretary of Health finds it necessary to compel closures under the law for the interest of public health …." (*All Non-Life-Sustaining Businesses in Pennsylvania to Close Physical Locations As of 8 PM Today to Slow Spread of COVID-19,* March 19, 2020, available at https://www.governor.pa.gov/newsroom/all-non-life-sustaining-businesses-in-pennsylvania-toclose-    physical-locations-as-of-8-pm-today-to-slow-spread-of-covid-19/ (attached as **Exhibit N** to Sandler Declaration).).

    **Plaintiffs' response: Undisputed that Governor Wolf issued the referenced temporary guidances, which speak for themselves.**

9

17.    **Trustee's SOF 17:** On March 16, 2020, Governor Gretchen Whitmer of Michigan -- where the Debtors' headquarters, their main distribution center, and 82 of their stores are located – entered an executive order that closed Michigan's bars, theaters, casinos and other public spaces. (*Governor Whitmer Signs Executive Order Temporarily Closing Bars, Theaters, Casinos, and Other Public Spaces; Limiting Restaurants to Delivery and Carry-Out Orders*, March 16, 2020, available at https://www.michigan.gov/whitmer/0,9309,7-387-90499_90640-521763--,00.html (attached as **Exhibit O** to Sandler Declaration).) Governor Whitmer urged Michigan residents to"mak[e] smart choices" by "not putting [themselves] or others at risk by going out in public unless it is absolutely necessary." (*Id.*)

> **Plaintiffs' response: Undisputed that Governor Whitmer issued the referenced temporary order, which speaks for itself.**

18.    **Trustee's SOF 18:** On March 19, 2020, Pennsylvania became the first of the four states in which the Debtors' major retail and fulfillment operations were located to issue a "stay at home" or "shelter in place" type order. Similar orders soon followed in Michigan, Ohio and Illinois, all of which also were in lock-down by March 23, 2020. (Gov. Tom Wolf, Executive Order, dated March 19, 2020, available at
https://www.governor.pa.gov/wpcontent/uploads/2020/03/20200319-TWW-COVID-19-
business-closure-order.pdf (attached as **Exhibit P** to Sandler Declaration); Gov. Gretchen Whitmer, Executive Order 2020-21 (COVID-19), dated March 23, 2020, available at
https://www.michigan.gov/whitmer/0,9309,7-387-90487-522625--,00.html (attached as **Exhibit Q** to Sandler Declaration); Dir. of Public Health, Amy Acton, Stay at Home Order, dated March 22, 2020, available at
https://content.govdelivery.com/attachments/OHOOD/2020/03/22/file_attachments/1407840/Stay%20Home%20Order.pdf (attached as **Exhibit R** to Sandler Declaration); and Gov. JB Pritzker, Executive Order in Response to COVID-19 (COVID-19 Executive Order No. 8), dated March 20, 2020, available at https://www2.illinois.gov/IISNews/21288
Gov._Pritzker_Stay_at_Home_Order.pdf (attached as **Exhibit S** to Sandler Declaration).)

> **Plaintiffs' response: DISPUTED IN PART. Undisputed that the states issued the referenced orders, which speak for themselves. Disputed as to the characterization of the operations there as Defendants' "major" operations. Pursuant to Fed. R. Civ. P. 56(d)(1) and (2), Plaintiffs submit that because minimal formal discovery and no formal document production has taken place in this litigation, they are unable to present facts essential to justify their opposition to Defendants' Motion to the extent Defendants rely on this fact, and the Motion should therefore be denied or deferred until discovery has been taken.**

19.    **Trustee's SOF 19:** Further, on March 19, 2020, the proposed purchaser for the Levin Sale notified the Debtors that they would not proceed with the transaction, and thus, the stores covered by the Levin Sale would also have to be immediately closed by the Debtors. (Conversion Motion at ¶ 26.)

**Plaintiffs' response: DISPUTED. Disputed as to the communications between the Defendants and the proposed purchaser, and the claim that the stores would "have to be immediately closed" by the Defendants.  Defendant did not consult with its primary lenders, or its own consultants, before abruptly ceasing operations of \ stores, and at least one primary lender indicated that it could have been avoided. (Transcript of March 31, 2020 Hearing, D.I. 46-5 at 59 lines 1-20.)  Pursuant to Fed. R. Civ. P. 56(d)(1) and (2), Plaintiffs submit that because minimal formal discovery and no formal document production has taken place in this litigation, they are unable to present facts essential to justify their opposition to Defendants' Motion to the extent Defendants rely on this fact, and the Motion should therefore be denied or deferred until discovery has been taken.**

20.    **Trustee's SOF 20:** As a result of the COVID-19 pandemic and resultant shutdowns, shortly after the Petition Date, the Debtors' situation changed drastically upending the Debtors' plans for an orderly liquidation. Customer traffic in the Debtors' stores, which had been robust just days earlier, dissipated to almost nothing within the first week after the Petition Date. Specifically, during the initial days of the GOB Sales from March 5-8, 2020, deposits from inventory sales were in excess of $23 million; however, for the full week ending March 15, 2020, deposits from sales were just $8 million, suggesting, among other things, a precipitous drop in customer traffic in the Debtors' stores. (Conversion Motion at ¶ 22.)

**Plaintiffs' response: DISPUTED IN PART. Undisputed that Defendants generated the referenced million dollars of deposits.  Disputed as to the characterizations of the pandemic as "drastically upending" the Defendants' plans and the speculation regarding the amount of foot traffic in its stores.  Pursuant to Fed. R. Civ. P. 56(d)(1) and (2), Plaintiffs submit that because minimal formal discovery and no formal document production has taken place in this litigation, they are unable to present facts essential to justify their opposition to Defendants' Motion to the extent Defendants rely on this fact, and the Motion should therefore be denied or deferred until discovery has been taken.**

21.    **Trustee's SOF 21:** The restrictions on economic and other activity that various state and local governments determined to be necessary to slow the spread of the COVID-19 disease mandated that the Debtors discontinue all retail operations and other non-essential business operations – a scenario they had not and could not have planned for when they developed their Planned Liquidation Process. (Conversion Motion at ¶¶ 1-2.)

**Plaintiffs' response:  DISPUTED IN PART. Undisputed that there were restrictions on economic and other activity.  Disputed that these events "mandated" discontinuation of all retail operations and that disruptions could not have been planned for. Pursuant to Fed. R. Civ. P. 56(d)(1) and (2), Plaintiffs submit that because minimal formal discovery and no formal document production has taken**

place in this litigation, they are unable to present facts essential to justify their opposition to Defendants' Motion to the extent Defendants rely on this fact, and the Motion should therefore be denied or deferred until discovery has been taken.

22.    **Trustee's SOF 22:** Soon thereafter, the Debtors' management, with their professionals' counsel and assistance, determined that the Planned Liquidation Process, in its then-form, was no longer viable and that a more immediate shutdown of the Debtors' stores and remaining support operations was in the estates' and creditors' best interest. (Conversion Motion at ¶¶ 1-2.) Thus, on March 19, 2020, the Debtors determined to suspend all sales operations in all stores and terminate the majority of their employees, excluding workers who would be needed for the rest of the liquidation and wind-down process. (Conversion Motion at ¶ 25.)

**Plaintiffs' response: DISPUTED IN PART. Undisputed that Defendants terminated the majority of their employees.  Disputed as to all characterizations of the decision-making process leading to those terminations, and the characterization of the decision as being in anyone's "best interest."  Pursuant to Fed. R. Civ. P. 56(d)(1) and (2), Plaintiffs submit that because minimal formal discovery and no formal document production has taken place in this litigation, they are unable to present facts essential to justify their opposition to Defendants' Motion to the extent Defendants rely on this fact, and the Motion should therefore be denied or deferred until discovery has been taken.**

23.    **Trustee's SOF 23:** Accordingly, on March 19, 2020, AVF issued a WARN Act notice to employees which stated:

On March 5, 2020, Art Van Furniture, LLC (the "Company") informed employees that it had made the difficult decision to wind-down its operations, to include the closure of its retail facilities located at 6500 E 14 Mile Rd, Warren, MI, 48092; 27775 Novi Rd, Novi, MI, 48377; 4375 28th St SE, Grand Rapids, MI, 49321; 4095 E Court St, Burton, MI, 48509; 14055 Hall Rd, Shelby Township, MI, 48315; 8748 W Saginaw Hwy, Lansing, MI, 48917; and 4273 Alpine Ave Nw Ste B, Alpine, MI, 49321, which would in the permanent termination the employment of all employees at these locations.

*Since initial notice, the Company has been impacted by the novel COVID-19 virus and the resulting, and sudden, negative economic impact. Due to these unforeseen events, the Company can no longer support the wind-down of its retail operations through the originally projected termination date. The Company, therefore, submits this revised notice to you to satisfy any obligation that may exist under the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act").*

All terminations of employment will be permanent and you will not have bumping rights for other positions (i.e., you will not have the right to displace employees with less seniority). The employment of Art Van's sales associates and other commissioned employees, visuals, housekeepers, drivers, helpers, and other hub warehouse staff, Selling Managers and Outlet Managers as well as any Sales or Store Manager who is not scheduled to perform services on March 21, 2020 or March 22, 2020, will be terminated on March 20, 2020. All CPU's and office staff, along with the Store Manager and/or Sales Manager scheduled to work oMarch 21, 2020 or March 22, 2020 will be terminated at the end of the business day on March 22, 2020. Nothing in this letter alters your at-will employment status with the Company. You will be required to work through your Termination Date, following which date you will not be required to report to work or provide any services to the Company.

(WARN Act notice issued by AVF on March 19, 2020, to AVF employees) ("COVID WARN Notice") (emphases added and attached as **Exhibit T** to Sandler Declaration).

      **Plaintiffs' response: Undisputed that Defendants gave this notice to some employees.**

24.    **Trustee's SOF 24:** Plaintiffs Todd Stewart and Jennifer Sawle were two of AVF's employees, and each worked at one of AVF's 82 stores in the State of Michigan. In accordance with the COVID WARN Notice, the Trustee believes that Mr. Stewart and Ms. Sawle were both terminated by AVF, as were most of AVF's and SLI's employees,on March 20, 2022 (the "Layoff"). (Complaint (attached as **Exhibit Y** to Sandler Declaration), ¶¶ 6, 7, 10.)

      **Plaintiffs' response: DISPUTED IN PART. Undisputed Plaintiffs were Defendants' employees, that they were terminated, and that they filed the referenced Complaint, which speaks for itself.  Disputed as to the characterization of which entity legally employed and terminated them, and as to the Trustee's beliefs about their employment.  Pursuant to Fed. R. Civ. P. 56(d)(1) and (2), Plaintiffs submit that because minimal formal discovery and no formal document production has taken place in this litigation, they are unable to present facts essential to justify their opposition to Defendants' Motion to the extent Defendants rely on this fact, and the Motion should therefore be denied or deferred until discovery has been taken.**

25.    **Trustee's SOF 25:** During a March 19, 2020 status conference, Debtors' counsel advised the Bankruptcy Court of the store closures. (Transcript of March 19, 2020 Hearing (attached as **Exhibit U** to Sandler Declaration) at p. 10, line 8 to p. 11, line 1.)

      **Plaintiffs' response: DISPUTED IN PART. Undisputed that Debtors' counsel advised the Bankruptcy Court of some store closures but which ones are referred to in this statement is uncertain.**

26.    **Trustee's SOF 26:** Judge Sontchi stated on the record at a later related hearing:

This is an unfortunate situation. It is nobody's fault. It is nobody's fault. I know many people in my local business community who are good business people who have great businesses who are staring down the barrel of a gun based on what's happened. It's just—it extraordinary. And I'm not casting aspersions on anyone, but obviously this case changed dramatically, as did the whole world—well not the whole world but as to the United States in the last three weeks, three or four weeks.

(Transcript of March 31, 2020 Hearing (attached as **Exhibit V** to Sandler Declaration) at p. 47, line 24 to 48, line 7.)

      **Plaintiffs' response: Undisputed.**

27.    **Trustee's SOF 27:** Wells Fargo declared a default under the Interim CC Order, and terminated use of cash collateral as of March 24, 2020; later extended through March 31 and finally April 6. (Conversion Motion at ¶ 27.)

      **Plaintiffs' response: Undisputed.**

28.    **Trustee's SOF 28:** Unable to continue the Chapter 11 Cases without the continued consent of the Debtors' secured lenders to use their cash collateral, the Debtors filed the Conversion Motion and the Chapter 11 Cases were converted to chapter 7 proceedings pursuant to an order entered on April 6, 2020. (*Order Granting Debtor's Amended Motion to Convert* [Bankr. Doc. 263] (attached as **Exhibit W** to Sandler Declaration).)

      **Plaintiffs' response: Undisputed that the Defendants filed the Conversation Motion, which speaks for itself.**

29.    **Trustee's SOF 29:** The COVID-19 pandemic was a natural disaster. (Hiltzik, M., "A declassified government report offers no support for the lab-leak theory of COVID's origin," *Los Angeles Times*, Nov. 1, 2021, available at https://www.latimes.com/business/story/2021-11-01/declassified-government-report-lab-leak-theory (attached as **Exhibit Z** to Sandler Declaration) ("LA Times Article") (recently declassified report by federal governmental agency, Office of the Director of National Intelligence ("ODNI Report"), "provides details of the agencies' findings that make clear they looked into the specific assertions that have been proposed in support of the lab leak theory and found them wanting"); Office of the Director of National Intelligence, "Updated Assessment on COVID-19 Origins" Report, available at https://www.dni.gov/files/ODNI/documents/assessments/Declassified-Assessment-on-COVID-19-Origins.pdf (ODNI Report referenced in the LA Times Article) (attached as **Exhibit AA** to Sandler Declaration).)

      **Plaintiffs' response: DISPUTED.  The referenced article explains that the government report refused to endorse specific theories that the virus was deliberately leaked.  As to the ultimate question whether it originated from a**

**laboratory, or through natural transmission, the government did not reach any definitive conclusions.  As the article notes: "The report does state that, among its contributing agencies, four "assess with low confidence" that the virus probably sprung from natural sources; one finds with "moderate confidence" that the pandemic "most likely" resulted from a laboratory incident, and three couldn't decide between the two theories."**

Dated: December 3, 2021                              Respectfully Submitted,

                                                     */s/ Michael J. Joyce*
                                                     Michael J. Joyce (No. 4563)
                                                     **JOYCE, LLC**
                                                     1225 King Street, Suite 800
                                                     Wilmington, DE 19801
                                                     Telephone: (302)-388-1944
                                                     Email: mjoyce@mjlawoffices.com

OF COUNSEL:

René S. Roupinian (*admitted pro hac vice*)
Jack A. Raisner (*admitted pro hac vice*)
**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

*Attorneys for Plaintiffs and the putative class*