## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| ART VAN FURNITURE, LLC, *et al.*,[1] | Case No. 20-10553 (CSS) |
| Debtors. | (Jointly Administered) |
| TODD STEWART and JENNIFER SAWLE on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Adv. Proc. No. 20-50548 (CSS) |
| vs. | |
| ART VAN FURNITURE, LLC, *et al.*, | |
| Defendants. | |

## <u>CHAPTER 7 TRUSTEE'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND CROSS MOTION TO STAY CONSIDERATION</u>

Alfred T. Giuliano, Chapter 7 Trustee (the "<u>Trustee</u>") to Art Van Furniture, LLC

("<u>AVF</u>"), Sam Levin, Inc. ("<u>SLI</u>") and related debtors (collectively, the "<u>Debtors</u>" or "<u>Art Van</u>")

submits this opposition, together with the declaration of Bradford J. Sandler (the "<u>Sandler</u>

<u>Declaration</u>"), in opposition to the *Plaintiffs' Motion for Class Certification and Related Relief*

(the "<u>Motion for Class Certification</u>").  In addition, as the Court's decision on the Trustee's

pending *Motion for Summary Judgement* may moot the relief requested by Plaintiffs, the Trustee

---

[1]  The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

moves the Court to stay consideration on the Motion for Class Certification until such time as the

Court issues a decision on the Motion for Summary Judgment (the "<u>Cross Motion</u>").

DOCS_DE:237279.1 05233/003

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

FACTS ..................................................................................................................................3

    A.    The Planned Liquidation Process..........................................................................3

    B.    The Chapter 11 Cases and the Rapid Escalation of the COVID-19 Pandemic.................................................................................................................6

    C.    The COVID-19 Layoff ...........................................................................................7

    D.    The Adversary Proceeding....................................................................................9

ARGUMENT .......................................................................................................................10

    A.    Class Action Certification Should Be Rare in the Bankruptcy Context. ..............10

    B.    The Court Should Deny the Motion for Class Certification Because Plaintiffs Cannot Fairly and Adequately Represent the Interests of the Purported Class (FRCP 23(a)(4)).........................................................................12

    C.    The Court Should Deny the Motion for Class Certification Because Plaintiffs Cannot Meet the Numerosity Requirement (FRCP23 (a)(1)) ...............20

    D.    The Court Should Deny the Motion for Class Certification because Plaintiffs Cannot Establish that a Class Action is Superior to Other Available Methods of Adjudicating Their Claims (FRCP23(b)).........................23

    E.    The Trustee Moves the Court to Stay its Consideration of the Motion for Class Certification Until After It Decides the Pending Motion for Summary Judgment. ............................................................................................26

CONCLUSION....................................................................................................................28

DOCS_DE:237279.1 05233/003

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Binford v. First Magnus Fin. Corp.* (*In re First Magnus Fin. Corp.*),
    403 B.R. 659 (D. Ariz. 2009)........................................................................ 22

*Cote v. Fresh & Easy, L.L.C.* (*In re Fresh & Easy, L.L.C.*),
    2016 Bankr. LEXIS 2883 (Bankr. D. Del. June 2, 2016) ...................................... 20

*Delaney v. FTS Int'l Servs., L.L.C.*,
    No. 4:16-cv-662, 2017 U.S. Dist. LEXIS 8144 (M.D. Pa. Jan. 20, 2017).............................. 19

*Epic Systems. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018)........................................................ 15, 16, 17, 20

*Garcia v. FTS International, Inc.*,
    No. 4:15-cv-963, 2016 U.S. Dist. LEXIS 188025, *4 (N.D. Tex. Sept. 1, 2016) ................... 19

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U. S. 20,  111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)........................................ 17

*Horowitz v. AT&T Inc.*,
    No. 3:17-cv-4827-BRM-LHG, 2019 U.S. Dist. LEXIS 58 (D.N.J. Jan. 2, 2019).................... 19

*In re Bally Total Fitness of Greater N.Y., Inc.*,
    402 B.R. 616 (Bankr. S.D.N.Y. 2009) ............................................................ 24

*In re Energy Future Holdings Corp.*,
    558 B.R. 684 (D. Del. 2016)....................................................................... 23

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008)....................................................................... 11

*In re Sacred Heart Hosp.*,
    177 B.R. 16 (Bankr. E.D. Pa. 1995) .............................................................. 11

*In re Woodmoor Corp.*,
    4 B.R. 186 (Bankr. D. Colo. 1980) ............................................................... 22

*Kahler v. FirstPlus Fin., Inc.* (*In re FirstPlus Fin., Inc.*),
    248 B.R. 60 (Bankr. N.D. Tex. 2000).......................................................... 10, 11

*Korea Week, Inc. v. GOT Capital, L.L.C.*,
    CIVIL ACTION NO. 15-6351, 2016 U.S. Dist. LEXIS 69646, at *39 (E.D. Pa. May 27, 2016)
    .......................................................................................... 12

*Mazurkiewicz v. Clayton Homes, Inc.*,
    971 F. Supp. 2d 682 (S.D. Tex. 2015) ........................................................... 19

*NLRB v. Alternative Entertainment, Inc.*,
    858 F.3d 393 (6th Cir. 2017) ..................................................................... 17

*Palmer v. Convergys Corp.*,
    No. 7:10-cv-145 (HL), 2012 WL 425256 (M.D. Ga. Feb. 9, 2012) ............................... 18

*Schuman v. Connaught Grp., Ltd.* (*In re Connaught Grp., Ltd.*),
    491 B.R. 88 (Bankr. S.D.N.Y. 2013)........................................................... 11, 23

*Serrano v. Globe Energy Service, LLC*,
    No. 15-cv-00170, 2016 U.S. Dist. LEXIS 188027, *7-*8 (W.D. Tex. Mar. 3, 2016)............. 19

*Teta v. Chow* (*In re TWL Corp.*),
    712 F.3d 886 (5th Cir. 2013) ................................................................ 20, 24

ii

*Wilborn v. Wells Fargo Bank, N.A. (In re Wilborn),*
    609 F.3d 748 (5th Cir. 2010) ........................................................... 11

## Statutes

21 U.S.C. § 2104(a)(5) ........................................................................... 16
29 U. S. C. §216(b) ................................................................................. 17
29 U.S.C. § 2101 ................................................................................ 1, 5
29 U.S.C. § 2102(b)(2)(A) ........................................................................ 9
29 U.S.C. § 2102(b)(2)(B) ....................................................................... 10

## Other Authorities

Dir. of Public Health, Amy Acton, Stay at Home Order, dated March 22, 2020 ......................... 7
Gov. Gretchen Whitmer, Executive Order 2020-21 (COVID-19), dated March 23, 2020 ............ 6
Gov. JB Pritzker, Executive Order in Response to COVID-19 (COVID-19Executive Order No.
    8), dated March 20, 2020 ...................................................................... 7
*Pres. Donald J. Trump, Proclamation on Declaring a National Emergency Concerning the
    Novel Coronavirus Disease (COVID-19) Outbreak,* dated March 13, 2020 (85 *F.R* 15,337
    (March 13 2020) ................................................................................ 6
Tom Wolf, Executive Order, dated March 19, 2020 ...................................................... 6

## Rules

Fed. R. Civ. P. 23 .................................................................................. 11
Fed. R. Civ. P. 23(a) ............................................................................ 11, 23
Fed. R. Civ. P. 23(a)(1) ............................................................................ 20
Fed. R. Civ. P. 23(a)(4) ............................................................................. 2
Fed. R. Civ. P. 23(b) ............................................................................ 11, 23
Fed. R. Civ. P. 23(b)(3) ....................................................................... 12, 23, 26

DOCS_DE:237279.1 05233/003

## PRELIMINARY STATEMENT

A class action is not appropriate here for several basic reasons.  First, as a threshold matter, and as more fully discussed in the Trustee's Motion for Summary Judgment, the WARN Act is not applicable; therefore, as a matter of law, there can be no class.[1] Secondly, even if the WARN Act does apply, which it clearly does not, the Plaintiffs are required to participate in an arbitration proceeding.  Third, even if the Plaintiffs are not required to participate in an arbitration proceeding, they expressly agreed not to participate in a class action and are ineligible as class representatives.  Finally, notwithstanding that the Plaintiffs agreed not to participate in a class action, a class action will not lead to an efficient resolution of claims, but rather will place an undue and unnecessary cost on the estates and its creditors.  Accordingly, the Court should deny the Motion for Class Certification.

In an entirely unforeseeable and unprecedented economic shutdown of the United States' economy caused by the COVID-19 pandemic, the Debtors' orderly liquidation came to a premature  halt forcing them to terminate the vast majority of their employees on March 20, 2020 (the "Layoff"), including plaintiffs Jennifer Sawle and Todd Stewart ("Plaintiffs").  Within days after their termination, Plaintiffs filed this adversary proceeding that alleges the Debtors violated the *Worker Adjustment and Retraining Notification (WARN) Act* (29 U.S.C. § 2101 et seq.) (the "WARN Act") in connection with the Layoff. In his Answer and his Amended Answer respectively, the Trustee denied that Plaintiffs meet the standards for class certification and

[1]

asserted that Plaintiffs' WARN Act claims are subject to mandatory arbitration and cannot proceed by way of a class action.[2]

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs now ask this Court to certify a class consisting of some of the Debtors' employees who were terminated on or about March 20, 2020[3] and appoint them as class representatives. What Plaintiffs' Motion for Class Certification fails to disclose, however, is that both Plaintiffs signed agreements that require them to resolve employment-related claims against the Debtors *in an individual capacity* and not as a member of a class or in a representative capacity.  Accordingly, Plaintiffs cannot "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Moreover, Plaintiffs have not established that (1) the putative class satisfies the numerosity requirement and  (2) a class action would be a superior method of resolving WARN Act issues to the obvious alternative here, which is through the on-going claim reconciliation and allowance process.  As Plaintiffs cannot establish that the proposed certification meets the requirements of both Federal Rule of Civil Procedure 23(a) and 23(b), the Motion for Class Certification must fail.

Finally, in connection with his Motion for Summary Judgment which is currently pending before the Court, the Trustee seeks summary judgment with respect to three defenses to liability from and under the WARN Act: (i) the liquidating fiduciary exception; (i) the natural

---

[2] *See Answer* [Adversary Doc. 25], at ¶¶ 31-42. *Amended Answer* [Adversary Doc. 40], at ¶¶ 31-42; Fourth Affirmative Defense and Fifth Affirmative Defense.

[3] Plaintiffs have also proposed that the putative class includes all of the Debtors' other employees who were terminated without cause 90 days prior to the Layoff (December 20, 2019) and 90 days after the Layoff (through June 17, 2020).

DOCS_DE:237279.1 05233/003

disaster exception; and, (iii) the unforeseeable business circumstances exception.[4]  If the

Trustee's Motion for Summary Judgment is granted, the Motion for Class Certification is moot.

It is in the interest of judicial efficiency, therefore, for the Court to stay its consideration of the

Motion for Class Certification until the Trustee's Motion for Summary Judgment is fully

adjudicated, and the Trustee moves the Court to do so.

## FACTS

### A.    The Planned Liquidation Process[5]

1.    On March 8, 2020 (the "Petition Date"), the Debtors commenced their

respective voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' cases are

being jointly administered under lead Case No. 20-10553 (CSS).

2.    Upon the Debtors' motion (the "Conversion Motion"), based on the facts

and circumstances described further below, less than a month after the Petition Date, on April 6,

2020, the Chapter 11 cases were converted to chapter 7 proceedings (the "Cases").

3.    Prior to the Petition Date, the Debtors had sold furniture for over 60 years,

with 169 stores in Michigan, Indiana, Ohio, Illinois, Pennsylvania, Maryland, Missouri, and

Virginia, and approximately 4,500 employees.[6]

---

[4] *See Answer* [Adv. Docket No. 25], at ¶¶ 31-42; *Amended Answer* [Adv. Docket No. 40], at ¶¶ 31-42, Fourth Affirmative Defense and Fifth Affirmative Defense.

[5] Unless otherwise indicated, the facts in this Opposition are supported by the *Declaration of Bradford Sandler* [the "MSJ Dec."] [Adv. Docket No 46] *in Support of the Trustee's Motion for Summary Judgment* and the documents appended thereto.

[6] *Declaration of David Ladd, Executive Vice President and Chief Financial Officer of Art Van Furniture, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Bankr. Doc. 12] ("Ladd Declaration") at 2. A copy of the Ladd Declaration is **Exhibit A** to the MSJ Dec. A detailed breakdown of the Debtors' employees also is set forth in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses and B) Continue Employee Benefits Programs and (II) Granting Related Relief* [Docket No. 9].

4.      As is more particularly described in the *Memorandum In Support of the Trustee's Motion for Summary Judgment* [Adv. Docket No.44] (the "MSJ Memorandum"), the Debtors filed the Chapter 11 Cases with the intention of winding down their affairs by liquidating their inventory through store closing sales (the "GOB Sales"), paying down their secured debt, and using any remaining proceeds of their GOB Sales to wind-down their operations.[7] As of the Petition Date, the Debtors were party to a binding letter of intent for a sale of 44 Levin and Wolf stores and related assets and operations (the "Levin Sale") to a third party buyer. The GOB Sales, the Levin Sale, and other actions taken by the Debtors in the Chapter 11 cases were all part of the orderly liquidation and wind-down planned by the Debtors prior to and as of the Petition Date (the "Planned Liquidation Process") in order to maximize the liquidation value of the estates' assets and the recoveries for the Debtors' creditors.[8]

5.      In sum, prior to entering bankruptcy, the Debtors had an orderly wind-down plan, comprised of the GOB Sales to liquidate AVF's assets including 125 stores and the Levin Sale to liquidate the SLI Assets. In furtherance of that Planned Liquidation Process, on March 5, 2020, Art Van publicly announced that it was liquidating and going out of business.[9] On that same date, as part of its Planned Liquidation Process, although not required given that Art Van was a liquidating fiduciary at the time, but in an abundance of caution, AVF issued a WARN Act notice to approximately 1,400 potentially affected employees who worked in or reported to seven facilities in Michigan, two facilities in Illinois and one in Pennsylvania, which

---

[7] Ladd Declaration at ¶¶ 6 & 18.

[8] Ladd Declaration at ¶¶ 6, 16, 17, 18, 19, 20, 40, 41, 42 & 43.

[9] *See* Art Van GOB Press Release (attached as **Exhibit D** to MSJ Dec.).

4

were the only facilities of the Debtors that arguably could satisfy the employee threshold

requirements under the WARN Act.

      6.     Both of the Plaintiffs worked at an affected location in Michigan and were

notified pre-petition of the Planned Liquidation Process, as follows:

> Art Van Furniture, LLC (the "Company") has made the difficult decision to wind-down its operations, which will include the closure of its facilities located at 6500 E 14 Mile Rd, Warren, MI, 48092; 27775 Novi Rd, Novi, MI, 48377; 4375 28th St SE, Grand Rapids, MI,49321; 4095 E Court St, Burton, MI, 48509; 14055 Hall Rd, Shelby Township, MI, 48315; 8748 W Saginaw Hwy, Lansing, MI, 48917; and 4273 Alpine Ave Nw Ste B, Alpine, MI, 49321, and will be permanently terminating the employment of all employees at these locations.
>
> The Company submits this notice to you to satisfy any obligation that *may* exist under the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act"). *If no obligations exist, this notice is being provided to you voluntarily.* (emphasis added)
>
> All terminations of employment will be permanent and you will not have bumping rights for other positions (i.e., you will not have the right to displace employees with less seniority). While an exact date has not yet been established for these closures, it is anticipated that your employment with the Company will terminate on May 5, 2020 or a date within 14 days thereafter which may be provided to you by the Company (your "Termination Date"). Nothing in this letter alters your at-will employment status with the Company.
>
> You will be required to work through your Termination Date, following which date you will not be required to report to work or provide any services to the Company.

(the "GOB Sale WARN Notice").[10]

---

[10] A copy of the GOB Sale WARN Notice is **Exhibit 1** to the Sandler Declaration.

DOCS_DE:237279.1 05233/003

7.     The Debtors' target date to end the GOB Sales was the end of April 2020.[11]  The GOB Sales, which began pre-petition, commenced as expected, and went well at first.  From March 5, 2020, through March 8, 2020, deposits from inventory sales were in excess of $23 million.[12]

## B.     The Chapter 11 Cases and the Rapid Escalation of the COVID-19 Pandemic

8.     The unprecedented, extraordinary circumstances caused by the COVID-19 pandemic confronting the Debtors during the period March 8, 2020 (the Petition Date) and March 19, 2020 (the day of the COVID-19 WARN Notice, as discussed below) are a matter of public record. On March 13, 2020, then-President Donald Trump declared a national emergency,[13] and over the next ten days nonessential businesses were required to shut down throughout the United States.   More specifically, on March 19, 2020, Governor Wolf ordered all non-essential businesses in the State of Pennsylvania, where 25 of the Debtors' stores and two of their distribution centers were located, to close by 8:00 p.m. Eastern Standard Time due to the COVID-19 pandemic. Similar orders soon followed in Michigan, Ohio and Illinois, all of which also were in lock-down by March 23, 2020.[14]

---

[11] *See* Ladd Declaration at ¶ 18 (Debtors seeking to complete store closure sales in six to eight weeks from March 5, 2020).

[12] *Corrected Motion for Entry of Order Converting Their Chapter 11 Cases to Cases Under Chapter 7* [Bankr. Doc. 252] (the "Conversion Motion") at ¶ 22.  A copy of the Conversion Motion is **Exhibit H** to the MSJ Dec.

[13] *Pres. Donald J. Trump, Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak,* dated March 13, 2020 (85 *F.R* 15,337 (March 13 2020)), available at https://www.govinfo.gov/content/pkg/FR-2020-03-18/pdf/2020-05794.pdf (attached as **Exhibit L** to the MSJ Declaration).

[14] Pennsylvania: Gov. Tom Wolf, Executive Order, dated March 19, 2020, available at https://www.governor.pa.gov/wp-content/uploads/2020/03/20200319-TWW-COVID-19-business-closure-order.pdf (attached as **Exhibit P** to MSJ Declaration); Michigan: Gov. Gretchen Whitmer, Executive Order 2020-21 (COVID-19), dated March 23, 2020, available at https://www.michigan.gov/whitmer/0,9309,7-387-90487-522625--,00.html (attached as **Exhibit Q** to MSJ Declaration); Ohio: Dir. of Public Health, Amy Acton, Stay at Home

9.      As a result, instead of being able to conduct an orderly chapter 11
liquidation that started pre-petition and would have continued post-petition for 60 days or so, the
Debtors were forced to close all their stores, discontinue their GOB Sales and send everybody
home indefinitely. Without the capital to continue the liquidation process from the proceeds of
the GOB Sales or additional funding from their secured lenders, the Debtors did not have the
money to continue funding payroll (or other chapter 11 administrative expenses such as rent)
during an open-ended nationwide shut down.

## C.      The COVID-19 Layoff

10.      Accordingly, on March 19, 2020, with Pennsylvania already locked down
and with other states imminently to follow Pennsylvania's lead, AVF in a further abundance of
caution issued a 2nd WARN Act notice to employees which stated:

> On March 5, 2020, Art Van Furniture, LLC (the "Company")
> informed employees that it had made the difficult decision to wind-
> down its operations, to include the closure of its retail facilities
> located at 6500 E 14 Mile Rd, Warren, MI, 48092; 27775 Novi Rd,
> Novi, MI, 48377; 4375 28th St SE, Grand Rapids, MI, 49321; 4095
> E Court St, Burton, MI, 48509; 14055 Hall Rd, Shelby Township,
> MI, 48315; 8748 W Saginaw Hwy, Lansing, MI, 48917; and 4273
> Alpine Ave Nw Ste B, Alpine, MI, 49321, which would in the
> permanent termination the employment of all employees at these
> locations.
>
> ***Since initial notice, the Company has been impacted by the novel
> COVID-19 virus and the resulting, and sudden, negative economic
> impact. Due to these unforeseen events, the Company can no
> longer support the wind-down of its retail operations through the***

---

Order, dated March 22, 2020, available at
https://content.govdelivery.com/attachments/OHOOD/2020/03/22/file_attachments/1407840/Stay%20Home%20Or
der.pdf (attached as **Exhibit R** to MSJ Declaration); and Illinois: Gov. JB Pritzker, Executive Order in Response to
COVID-19 (COVID-19Executive Order No. 8), dated March 20, 2020, available at
https://www2.illinois.gov/IISNews/21288-Gov._Pritzker_Stay_at_Home_Order.pdf (attached as **Exhibit S** to MSJ
Declaration).

*originally projected termination date.  The Company, therefore, submits this revised notice to you to satisfy any obligation that may exist under the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN Act").*

All terminations of employment will be permanent and you will not have bumping rights for other positions (i.e., you will not have the right to displace employees with less seniority). The employment of Art Van's sales associates and other commissioned employees, visuals, housekeepers, drivers, helpers, and other hub warehouse staff, Selling Managers and Outlet Managers as well as any Sales or Store Manager who is not scheduled to perform services on March 21, 2020 or March 22, 2020, will be terminated on March 20, 2020. All CPU's and office staff, along with the Store Manager and/or Sales Manager scheduled to work on March 21, 2020 or March 22, 2020 will be terminated at the end of the business day on March 22, 2020.  Nothing in this letter alters your at-will employment status with the Company.  You will be required to work through your Termination Date, following which date you will not be required to report to work or provide any services to the Company.

(the "COVID-19 WARN Notice") (emphasis added).[15]

11.     Plaintiffs Todd Stewart and Jennifer Sawle were two of AVF's employees, and each worked at one of AVF's 82 stores in the State of Michigan (where AVF also had it main trucking terminal, its corporate headquarters and a distribution center).  Mr. Stewart was a store manager at an AVF Store in Shelby Township, Michigan, and Ms. Sawle was a salesperson at an AVF Store in Lansing, Michigan.  Trustee believes that Mr. Stewart and Ms. Sawle were both terminated by AVF in accordance with the COVID-19 WARN Notice, as were most of AVF's and SLI's employees (the "Terminated Employees"), on March 20, 2020 (the "Layoff").[16]

---

[15] A copy of the COVID-19 WARN Notice is at **Exhibit 2** to the Sandler Declaration.

[16] Complaint (attached as **Exhibit Y** to MSJ Declaration) at ¶¶ 6, 7, 10.

8

**D.**     **The Adversary Proceeding**

12.     On March 23, 2020, Plaintiffs initiated this adversary proceeding (the "Adversary Proceeding") by filing their Complaint in which they assert that the Debtors violated the WARN Act and seek, *inter alia*, judgment in favor of Plaintiffs and other similarly situated former employees for unpaid wages and other benefits and damages for up to 60 days that would have been otherwise paid, all determined in accordance with the WARN Act.

13.     The Trustee filed an Answer on December 10, 2020 [Adv. Docket No. 25], and in accordance with the Pretrial Scheduling Order [Adv. Docket No. 31], on October 29, 2021, the Trustee filed his First Amended Answer [Adv. Docket No. 40].  As was noted above, the Trustee denied that class certification was appropriate in both the Answer and the Amended Answer.

14.     On November 12, 2021, the Trustee filed his Motion for Summary Judgment [Adv. Docket No. 43] on the grounds that:

a.     AVF was not an "employer" under the WARN Act on March 20, 2020. It was a "liquidating fiduciary" which is not subject to the WARN Act's notice requirements;

b.     Assuming, *arguendo,* AVF was subject to the WARN Act, which it is not, pursuant to 29 U.S.C. § 2102(b)(2)(A) (the "unforeseeable business circumstances exception") (the "unforeseeable business circumstances exception"), AVF is not liable to Plaintiffs because the Debtors' inability to conduct the GOB Sales and other parts of the Planned Liquidation Process due to the unprecedented government-ordered business closures (or threatened closures) and the government-ordered requirement of citizens to shelter in place or

9

stay at home, together, constituted a business circumstance that was not reasonably foreseeable on January 18, 2020, when AVF would have had to give notice of the March 20, 2020 terminations;[17] and,

        c.    Assuming, *arguendo,* AVF was subject to the WARN Act, which it is not, pursuant to 29 U.S.C. § 2102(b)(2)(B) (the "natural disaster exception") (the "natural disaster exception"), it is not liable to Plaintiffs because the Plaintiffs' termination was caused by COVID-19, and COVID-19 is a "natural disaster."

        15.    The Motion for Summary Judgment is not yet adjudicated; it is expected to be fully briefed on December 17, 2021, and as mentioned above, for judicial economy, it should be adjudicated before the Motion for Class Certification is decided because if the Court grants the Motion for Summary Judgment, the Motion for Class Certification will be moot.

        16.    Plaintiffs, who are contractually ineligible to participate in an employment-related class action, now move this Court to certify their putative class. For the reasons set forth below, the Court should deny the Motion for Class Certification.

## **ARGUMENT**

### A.    **Class Action Certification Should Be Rare in the Bankruptcy Context.**

        17.    "In the bankruptcy context, class actions should be rare." *Kahler v. FirstPlus Fin., Inc. (In re FirstPlus Fin., Inc.*), 248 B.R. 60, 73 (Bankr. N.D. Tex. 2000). This is

---

[17] All of the Debtors' employees worked for either AVF or SLI.  Plaintiffs both worked for AVF, but all of the arguments set forth herein would apply equally to claims brought by former employees of SLI.  While AVF and SLI are not subject to WARN Act liability for the reasons discussed herein, Defendants AVF Holding Company, Inc., AVCE, LLC,  AVF Holdings I, LLC, AVF Holdings II, LLC, AVF Parent, LLC, Levin Parent, LLC, Art Van Furniture of Canada, LLC,  AV Pure Sleep Franchising, LLC, AVF Franchising, LLC, LF Trucking, Inc., and Comfort Mattress LLC are also not subject to WARN Act liability because they did not have any employees, and were not, therefore, "employers" under the WARN Act.

DOCS_DE:237279.1 05233/003

because the bankruptcy process "is unique in that it provides a forum for a collective claims resolution process that is similar to the purpose of class actions." *Id. See also Schuman v. Connaught Grp., Ltd.* (*In re Connaught Grp., Ltd.*), 491 B.R. 88, 96 (Bankr. S.D.N.Y. 2013) ("Class claims should be used sparingly in bankruptcy. The bankruptcy claims resolution process allows creditors to assert small claims cheaply and efficiently in a single forum."); *In re Sacred Heart Hosp.*, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995) (same).

18.     A bankruptcy court may not certify a class unless the elements for class certification pursuant to Federal Rule of Civil Procedure 23 ("FRCP") are satisfied. *Wilborn v. Wells Fargo Bank, N.A.* (*In re Wilborn*), 609 F.3d 748, 754 (5th Cir. 2010).  FRCP 23(a) establishes four threshold requirements for class certification, each of which must be established by the Plaintiffs and their counsel:  (i) the class is so numerous that joinder of all members is impracticable; (ii) there are questions of law or fact common to the class; (iii) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (iv) the representative parties will fairly and adequately protect the interest of the class. FRCP 23(a). The court must conduct a rigorous analysis of these requirements before certifying a class.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008); *In re FirstPlus Fin., Inc.*, 248 B.R. at 74. Notably, "the party seeking class certification bears the burden of proof on whether or not to certify the class." *Id.* at 73 A plaintiff's request for certification must fail if any one of these requirements is not met. *Id.*

19.     In addition to the requirements of FRCP 23(a), the Plaintiffs must also satisfy one of three elements under FRCP 23(b). The only element at issue here is FRCP

11

23(b)(3), which provides, in relevant part,  (3) the court finds that the questions of law or fact

common to class members predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy  . . ." FRCP 23(b)(3). As is set forth below, Plaintiffs have not met

this burden.

**B.**      **The Court Should Deny the Motion for Class Certification Because Plaintiffs Cannot Fairly and Adequately Represent the Interests of the Purported Class (FRCP 23(a)(4)).**

20.      Putting aside that the WARN Act is not applicable in these cases,

Plaintiffs are ineligible to represent a class of employees.  Quite simply, to the extent the

Plaintiffs believe that they are entitled to damages under the WARN Act, they contractually

agreed to assert such claims solely in his and her individual capacity and not as a part of a class

action or serve in a representative capacity (the "Individual Capacity Employment Agreement").

Accordingly, neither of the Plaintiffs can fairly and adequately protect the interest of the interests

of the putative class. *See Korea Week, Inc. v. GOT Capital, L.L.C.*, CIVIL ACTION NO. 15-

6351, 2016 U.S. Dist. LEXIS 69646, at *39 (E.D. Pa. May 27, 2016) ("As the named Plaintiffs

contractually waived their right to bring, or participate in, a class action they cannot adequately

represent the proposed Class.").

21.      AVF hired Ms. Sawle on or about July 28, 2014. At the time of the

Layoff, Ms. Sawle was a part-time, commissioned salesperson who earned $10.88 per hour plus

commissions. On or about July 8, 2018, Ms. Sawle executed an Acknowledgment and

_____

DOCS_DE:237279.1 05233/003

Arbitration Agreement (the "Sawle Employment Agreement"), which contained an

acknowledgement of receipt of the Employee Handbook and provides as follows:

### Agreement to Use Arbitration.

> In consideration of my continued employment, I agree that except for claims filed with administrative agencies, any dispute, matter or controversy arising out of my employment or the termination of my employment including claims of discrimination based upon race, color, religion, sex, weight, age, gender, national origin, disability, veteran status. genetic information, height, marital status, or any other statutory or other claim, shall be submitted for exclusive resolution to arbitration consistent with the Open Door Policy; that the decision of the arbitrator shall be final and binding on me and on the Company; and that the judgment of a court having jurisdiction may be entered upon the arbitration award for the purpose of enforcing the arbitration award.
>
> …
>
> ***I waive the right to bring a court case on any covered claim. I agree to arbitrate the shorter of any such claims, disputes or controversies only in an individual capacity and not as plaintiff or class member in any purported class, collective action, or representative proceeding.***

Sawle Employment Agreement (emphasis added).[18]

      22.    AVF hired Mr. Stewart on or about March 9, 2015.  At the time of the

Layoff, Mr. Stewart was a full-time, salaried store manager earning approximately $1,660.00 per

week. On or about June 23, 2018, Mr. Stewart executed the same Acknowledgment and

---

[18] A copy of the Sawle Employment Agreement is attached to the Sandler Declaration as **Exhibit 3.** Ms. Sawle was also party to an earlier agreement (executed on July 28, 2014 in connection with her initial employment) (the "Prior Sawle Employment Agreement"), a copy of which is attached to the Sandler Declaration as **Exhibit 4.**

DOCS_DE:237279.1 05233/003

Arbitration Agreement (the "Stewart Employment Agreement").[19]  Accordingly, both Plaintiffs

are parties to valid, binding contracts that require them to proceed to resolve their WARN Act

against the Debtors in an individual capacity and not by way of a class action.[20]

23.    The Employee Handbook is also clear that Covered Claims (such as the

WARN Act claims) may not be pursued or resolved through class or representative actions. It

states:

> **Individual Claims Only**. You agree to arbitrate any covered claims, disputes or
> controversies in an individual capacity and not as plaintiff or class member in any
> purported class, collective action or representative proceeding. (*Id*. at 78)
>
> **Arbitrator's Authority**. The Arbitrator may not consolidate more than one
> person's claim and may not otherwise preside over any form of a representative or
> class proceeding. (*Id*. at 78).
>
> **Rule 23**. The Arbitrator shall not have the authority to consolidate the claims of
> other Associates into one proceeding and shall not have the authority to fashion the
> proceeding as a class action or to award relief to a group of associates in one
> proceeding." (*Id*. at 83.)

24.    Individual Capacity Employment Agreements such as the ones executed

by Plaintiffs have been upheld time and time again by the United States Supreme Court, most

---

[19] A copy of the Stewart Employment Agreement is attached to the Sandler Declaration as **Exhibit 5.** Mr. Stewart was also party to an earlier agreement (executed on February 17, 2015 in connection with his initial employment) (the "Prior Stewart Employment Agreement"), a copy of which is attached to the Sandler Declaration as **Exhibit 6.**

[20] Claims arising under the WARN Act are clearly fall into the category of claims subject to arbitration under Rule 1 ("Covered Claims "). The Employee Handbook provides: Rule 1. Claims Subject to Mandatory Arbitration. Except as otherwise limited in these Arbitration Rules, all claims that arise out of or relate to the Associate's employment or separation from employment with Art Van and that concern legally protected rights for which a court or governmental agency would be authorized by law to grant relief are subject to arbitration. Claims subject to arbitration include claims for violation of any federal, state or local constitution, statute, ordinance, regulation or rule pertaining to employment and claims of violation of the common law. Examples of specific claims subject to arbitration include but are not limited to, the following: 1. Claims for unpaid wages or other compensation . . . ." Employee Handbook at 79. A copy of the May 2018 Employee Handbook is attached to the Sandler Declaration as **Exhibit 7**.

recently in *Epic Systems. Corp. v. Lewis*, 138 S. Ct. 1612 (2018) ("*Epic Systems*"). In *Epic*

*Systems*, the Supreme Court considered:

> Should employees and employers be allowed to agree that any
> disputes between them will be resolved through one-on-one
> arbitration? Or should employees always be permitted to bring their
> claims in class or collective actions, no matter what they agreed with
> their employers?

*Id*. at 1619.  The Court answered clearly:   "[A]s a matter of law the answer is clear. In the Federal

Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according

to their terms—including terms providing for individualized proceedings." *Id.*

25.    In *Epic Systems,* the Supreme Court resolved three separate appeals

involving employees who had entered into contracts with their employers providing for

individualized arbitration proceedings to resolve employment disputes and instead they sought to

litigate claims under the Fair Labor Standards Act ("FLSA") and related state law claims through

class or collective actions in federal court.[21] The employees acknowledged that while the Federal

Arbitration Act ("FAA") generally requires courts to enforce arbitration agreements as written,

its "saving clause" removes this obligation if the arbitration agreement violates some other

federal law and that, by requiring individualized proceedings, they argued that the agreements

violated the collective action provisions of the National Labor Relations Act ("NLRA"). The

Supreme Court disagreed and upheld the arbitration agreements, including the individualized

proceeding requirements.

---

[21] *Epic Systems* (United States Court of Appeals for the Seventh Circuit); *Ernst & Young LLP et al. v. Morris et al.*, (United States Court of Appeals for the Ninth Circuit), and *National Labor Relations Board v. Murphy Oil USA, Inc., et al.*,(United States Court of Appeals for the Fifth Circuit).

26.     While the claims at issue in *Epic Systems* arose under a different federal statute (FLSA), the Supreme Court's decision would be equally applicable to claims arising under the WARN Act.  Like in *Epic Systems*, the FAA governs the Plaintiffs' arbitration agreements,[22] and the *Epic Systems* court made clear that FAA requires courts to enforce arbitration agreements as written, including provisions requiring individualized adjudication. As for the employees' argument that this put the FAA at odds with the collective action provisions of the NLRA, the Court held, "A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing "'a clearly expressed congressional intention'" that such a result should follow." *Id*. at 1624.  The Court concluded:

> The policy may be debatable but the law is clear: Congress has instructed that arbitration agreements like those before us must be enforced as written. While Congress is of course always free to amend this judgment, we see nothing suggesting it did so in the NLRA—much less that it manifested a clear intention to displace the Arbitration Act. Because we can easily read Congress's statutes to work in harmony, that is where our duty lies.

*Id*. at 1632.

27.     Like in *Epic Systems,* Congress has not manifested a clear intent for the WARN Act to displace the FAA with respect to the enforcement of the Individual Capacity Employment Agreements. The WARN Act does include a right to "sue either for such person or for other persons similarly situated, or both . . ." (21 U.S.C. § 2104(a)(5)), but the Supreme Court noted that this specific language included in other statutes was NOT sufficient to manifest a

---

[22] "The Federal Arbitration Act, 9 U.S.C. ¶ 1 et seq, shall govern the interpretation, enforcement and proceedings pursuant to the arbitration agreement." Employee Handbook at 83.

Congressional intent to override the FAA's mandate that courts are to enforce arbitration

agreements as written. Specifically, the Court noted:

> The FLSA allows employees to sue on behalf of "themselves and other employees similarly situated," 29 U. S. C. §216(b), and it's precisely this sort of collective action the employees before us wish to pursue. Yet they do not offer the seemingly more natural suggestion that the FLSA overcomes the Arbitration Act to permit their class and collective actions. Why not? Presumably because this Court held decades ago that an identical collective action scheme (in fact, one borrowed from the FLSA) does not displace the Arbitration Act or prohibit individualized arbitration proceedings. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U. S. 20, 32, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991) (discussing Age Discrimination in Employment Act). In fact, it turns out that "[e]very circuit to consider the question" has held that the FLSA allows agreements for individualized arbitration. *Alternative Entertainment*, 858 F. 3d, at 413 (opinion of Sutton, J.) (collecting cases). Faced with that obstacle, the employees are left to cast about elsewhere for help. And so they have cast in this direction, suggesting that one statute (the NLRA) steps in to dictate the procedures for claims under a different statute (the FLSA), and thereby overrides the commands of yet a third statute (the Arbitration Act). It's a sort of interpretive triple bank shot, and just stating the theory is enough to raise a judicial eyebrow.

*Id*. at 1626.

28.     Had Congress intended to preclude individualized arbitration in WARN

Act cases, it could have said so. *See Epic Sys. Corp.,* 138 S. Ct. at 1626 (noting that "when

Congress wants to mandate particular dispute resolution procedures it knows exactly how to do

so," and that "Congress has likewise shown that it knows how to override the Arbitration Act

when it wishes").  It has not.

29.     Furthermore, the fact that Plaintiffs failed to timely initiate arbitration (as required)[23] and instead filed this Complaint does not change the fact that they each agreed to litigate WARN Act claims solely in their individual capacities.[24]  This agreement to arbitrate in their individual capacity would be meaningless if employees could simply circumvent it by filing a lawsuit instead of initiating arbitration as they contractually agreed, and then arguing in the contractually prohibited litigation that that their agreement not to litigate in a representative capacity is unenforceable.

30.     Indeed, numerous courts have approved stand-alone class action waivers that were not in arbitration agreements. In *Palmer v. Convergys Corp.*, No. 7:10-cv-145 (HL), 2012 WL 425256 (M.D. Ga. Feb. 9, 2012), plaintiffs asked the court to invalidate a class action waiver they executed in connection with their employment applications that did not require arbitration. They argued that in the absence of the *quid pro quo* of arbitration (and the enforcement mechanism of the FAA), the class action waiver was unconscionable under state law. The District Court disagreed, stating:

> While Plaintiffs are correct in stating that a vast majority of cases that address class action waivers do appear within the context of arbitration agreements, there is no logical reason to distinguish a waiver in the context of an arbitration agreement from a waiver in the context of any other contract. The trade-off argument advanced by Plaintiffs is unpersuasive. The validity of a class action waiver has nothing to do with the advantages of arbitration or some sort of trade-

---

[23] It should be noted that the Trustee has no objection to this matter being sent to arbitration should the Court determine that the arbitration agreements are binding under the Federal Arbitration Act, however, the time for the Plaintiffs to initiate an arbitration demand has long expired under the terms of their employment agreements.

[24] Pursuant to Rule 4, the failure to initiate arbitration by delivering written notice of the intent to arbitrate within 6 months of the Layoff shall "constitute a waiver and release with respect to the dispute and shall forever bar any claim involving the dispute." Employee Handbook at 80.

18

off. Instead, class action waivers are upheld because they are contractual
provisions that do not affect any substantive rights.

*Id.* at *6-7. *See also Horowitz v. AT&T Inc.*, No. 3:17-cv-4827-BRM-LHG, 2019 U.S. Dist.

LEXIS 58 (D.N.J. Jan. 2, 2019) (denying motion to reconsider court's decision to uphold validity

of class action waiver contained in a severance agreement that prohibited plaintiff from

prosecuting age discrimination claims collectively)*; Delaney v. FTS Int'l Servs., L.L.C.*, No.

4:16-cv-662, 2017 U.S. Dist. LEXIS 8144 (M.D. Pa. Jan. 20, 2017) (holding, as a matter of law,

that employees waived their right to litigate claims under the Fair Labor Standards Acts

collectively pursuant to a class action waiver in employment applications); *Serrano v. Globe*

*Energy Service, LLC*, No. 15-cv-00170, 2016 U.S. Dist. LEXIS 188027, *7-*8 (W.D. Tex. Mar.

3, 2016) (unpublished) (finding that a FLSA collective action waiver was valid and enforceable

when signed by the plaintiff in connection with an Employee Handbook and an

"Acknowledgment of Mutual Waiver of Jury Trial and Mutual Waiver of Class/Collective

Action."); *Garcia v. FTS International, Inc.*, No. 4:15-cv-963, 2016 U.S. Dist. LEXIS 188025,

*4 (N.D. Tex. Sept. 1, 2016) (unpublished) (FLSA collective action waiver enforceable when

signed by the plaintiffs in connection with their receipt of an Employee Handbook and signature

on an "Acknowledgment of Receipt of Employee Handbook."); *Mazurkiewicz v. Clayton Homes,*

*Inc.*, 971 F. Supp. 2d 682, 692 (S.D. Tex. 2015) (finding that it "makes little sense that an

arbitration agreement could take the more drastic step of entirely waiving a federal court forum,

including the right to proceed collectively, but an employment contract could not waive the right

to proceed collectively in court while preserving the right to bring suit on an individual claim.").

31.     As Plaintiffs are contractually barred from pursuing their WARN Act claims against the Debtors in the form of a class action, they simply cannot "adequately and fairly represent the putative class, and the Motion for Class Certification should be denied. [25]

**C.      The Court Should Deny the Motion for Class Certification Because Plaintiffs Cannot Meet the Numerosity Requirement (FRCP23 (a)(1))**

32.     To show numerosity, Plaintiffs must establish that the class is so numerous that joinder of all members is impracticable. There is no definite standard as to what size class satisfies Rule 23(a)(1). *Teta v. Chow* (*In re TWL Corp.*), 712 F.3d 886, 894 (5th Cir. 2013). Courts are thus instructed to "not focus on sheer numbers alone." *Id.*  Rather, to assess numerosity, the Court must consider the "geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Id.*

33.     Plaintiffs estimate that the putative class will include approximately 2,000 Terminated Employees and that each putative class member's claim will likely be under $15,000. Plaintiffs assert that the large number of potential putative class members and small dollar amount of their claims meets FRCP 23(a)'s the "numerosity" requirement".  Not so.

---

[25] In *Cote v. Fresh & Easy, L.L.C.* (*In re Fresh & Easy, L.L.C.*), 15-12220 (BLS), Adv. No. 15-51906 (BLS), Related to Adv. Docket Nos. 1, 25, 26, 2016 Bankr. LEXIS 2883 (Bankr. D. Del. June 2, 2016) Judge Shannon granted the employer's motion to compel arbitration of WARN Act claims where the arbitration agreement contained a class action waiver. Four months later, in *Chan v. Fresh & Easy, LLC (In re Fresh & Easy, LLC)* (Bankr. Del. Oct. 11, 2016), a separate adversary proceeding related to an identical arbitration agreement, the plaintiffs argued that the class-action waiver in the arbitration agreement was illegal and unenforceable since the waiver violated the employee's substantive right under the NLRA to engage in concerted employment activities. In doing so, they cited *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147 (7th Cir. 2016). Judge Shannon agreed with the plaintiffs and held that the NLRA created a substantive right to pursue a class action which was illegal under the FAA. As was discussed above, the Supreme Court rejected the argument that the NLRA created a right to file a class action and overturned *Lewis v. Epic Systems* on appeal.  Presumably, *Chan v. Fresh & Easy, LLC* is no longer good law.

34.     First, Plaintiffs *do not* offer any other facts upon which a finding of numerosity can be found, such as the geographical dispersion of the putative class and the ease with which putative class members may be identified. These are the Plaintiffs' and their counsel's burden to prove – not the Trustee's to disprove.

35.     Second, as to the amount of the potential claims of the putative class, both Plaintiffs allege that their alleged WARN Act claims are entitled to treatment as a chapter 11 administrative claim or a priority claim. Assuming that the alleged WARN Act claims are, as asserted by Plaintiffs, approximately $15,000 per "Affected Employee", creditors holding administrative or priority claims pursue their claims all the time through the bankruptcy claims process, which is both less costly and more efficient than a class action adversary.[26]  Chapter 7 Trustees are in the business of reconciling large amounts of creditor claims, and in these cases there have been over 3000 claims filed by consumers, employees, landlords, vendors and others; this is not unusual in a commercial chapter 7 bankruptcy case in Wilmington, Delaware.[27] Reconciling large volumes of claims is what Chapter 7 trustees routinely do, and the Bankruptcy Rules allow for an efficient claim reconciliation process.  Although perhaps disappointing to counsel for the Plaintiffs who would stand to generate enormous legal fees at the expense of the

---

[26] It should be noted that to the extent a class is formed, counsel for the putative class would be seeking counsel fees in the millions of dollars that would be awarded on top of the claims of the employees, which would go to further dilute the recovery of other creditors.  Here, either the Chapter 7 Trustee, who is an estate fiduciary and expert in reconciling claims, or the putative class counsel, who is not a fiduciary, will have to reconcile claims; the former reconciles claims in his ordinary course, and the latter will charge millions of dollars that will cause further dilution to the recovery of other creditors who already have been adversely affected by the reduced liquidation value from the Covid-19 pandemic.

[27] To the extent the Court determines that a "special" additional employee-only bar date should be established just for the Terminated Employees, which the Trustee does not believe is necessary, the Trustee is not opposed to setting such a special Terminated Employees-only bar date.

thousands of creditors (including hundreds of consumers) who would have to shoulder the

weight of those fees, the simple fact that there are a significant number of creditors holding the

same type of claim is not sufficient cause to find "numerosity" and certify a class. *See Binford v.*

*First Magnus Fin. Corp.* (*In re First Magnus Fin. Corp.*), 403 B.R. 659, 663-64 (D. Ariz. 2009)

(affirming the dismissal of a WARN Act adversary proceeding with a putative class of over

5,000 members because "the normal bankruptcy claims procedure was adequate to handle the

claims"); *In re Woodmoor Corp.*, 4 B.R. 186, 189 (Bankr. D. Colo. 1980) (concluding that Rule

23's numerosity requirement was not satisfied where putative class consisted of approximately

900 members, because their proofs of claims, which were then pending before the court, could

"be conveniently and expeditiously managed by following normal bankruptcy procedures").

     36.     In the event this Court ultimately determines that the WARN Act is

applicable, the issue of which will be determined soon in the context of the Trustee's Motion for

Summary Judgment, the Trustee will be in the best position to calculate the correct amount due

and owing to each "Affected Employee" (as defined in the WARN Act) through the customary

and efficient claims resolution process.  The group of potentially "Affected Employees" is

known by the Trustee and worked in only 10 locations. He can calculate the amounts owed to

each should this Court determine the WARN Act is applicable to the Plaintiffs.  He could also

create a special reconciliation process of working with the "Affected Employees" just like he has

already done with other creditor groups in these cases by informally reconciling millions of

dollars of claims in these cases.[28]  It is abundantly clear that even if the Court does find the

---

[28] As the Court is well-aware, the Trustee has already resolved millions of dollars of creditors' claims consensually in these cases.

WARN Act is applicable to the Plaintiffs, the Trustee is in the best position and is the best

person as an estate fiduciary to efficiently reconcile the claims of the limited and known group of

potentially "Affected Employees" working at the 10 locations, all of which he can do without the

additional cost of millions of dollars of class action legal fees.[29]

37.    For all the reasons stated above, Plaintiffs do not satisfy the numerosity

requirement of FRCP 23(a)(1), and the Court should accordingly deny the Motion for Class

Certification.

**D.    The Court Should Deny the Motion for Class Certification because Plaintiffs Cannot Establish that a Class Action is Superior to Other Available Methods of Adjudicating Their Claims (FRCP23(b)).**

38.    In addition to meeting the requirements of FRCP 23(a), a plaintiff must

also demonstrate, under FRCP 23(b)(3), "that the questions of law or fact common to class

members predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy." Fed. R. Civ. P. 23(b)(3). The superiority consideration requires a court to compare

the proposed class "to other available methods for fairly and efficiently adjudicating the

controversy." *See In re Energy Future Holdings Corp.*, 558 B.R. 684, 688 (D. Del. 2016).

39.    Here, as was set forth in detail in section C above, the alternative process

is the claims resolutions process, which is less costly and more efficient. *See e.g.*, *In re*

*Connaught Group, Ltd.*, 491 B.R. at 96 ("[T] he superiority inquiry under Rule 23(b)(3)

---

[29] See *infra*.

essentially comes down to whether the class action is superior to the bankruptcy claims

resolution process.").  As the Fifth Circuit noted in *In re TWL Corp.*:

> Within a bankruptcy case, a leading authority suggests that the
> superiority inquiry assumes added import: "Comparison should be
> made with respect to the requirements of treating the action as a
> class suit with the advantages and disadvantages that could result
> from prosecution of the claims by other means, especially in the
> bankruptcy context." 10 Collier on Bankruptcy ¶ 7023.03[3]. For
> this reason, it is notable that certain bankruptcy-related factors —
> including "whether class certification will adversely affect the
> administration of the case"—are "relevant to, and have been
> considered in the determination of, whether the requirements of
> Rule 23 have been met." Id. ¶ 7023.01. In *Computer Learning
> Centers*, for example, the court concluded that, in that case, a class
> action was not superior "to the ordinary operation of [the related]
> bankruptcy case." 344 B.R. at 92 (addressing a class proof of claim).
> *In our view, a bankruptcy court should consider the cost to the
> debtor's estate of a class adversary proceeding simply because the
> expense of adjudicating the controversy via a class action depletes
> the debtor's assets, which in turn diminishes the funding available
> to creditors, including, possibly, the very claimants pursuing the
> class action. **Such a consideration is particularly relevant in a case
> such as this, a Chapter 7 bankruptcy with insufficient assets to pay
> existing creditors***. As a corollary, we also conclude that a
> bankruptcy court should consider the availability and ease of the
> proof of claim process when determining whether a class adversary
> proceeding is a superior method for fairly and efficiently
> adjudicating a controversy.

*Id.*at 896-97 (emphasis supplied). *See also In re Bally Total Fitness of Greater N.Y., Inc.*, 402

B.R. 616, 620-21 (Bankr. S.D.N.Y. 2009) (noting that "bankruptcy significantly changes the

balance of factors to be considered in determining whether to allow a class action and thus class

certification is often less desirable in bankruptcy than in ordinary civil litigation.").

      40.    Furthermore, even if the putative class is certified, the Trustee will still

have to reconcile employee claims. This is because the putative class (i.e., consisting of

employees at only 10 locations) is significantly smaller than the total number of employees employed by the Debtors and terminated in connection with the Layoff, which means even if a putative class is certified, the Trustee, as trustees normally do, will nevertheless have to reconcile employee claims, and potentially even some employees in the putative class also may have non-WARN Act related claims. Certification of a small class like the alleged putative class would, at best, create no efficiency and, at worst, create inefficiencies (along with substantial additional fees and expenses borne by the other creditors, including the thousands of employees who would be outside of the putative class even if certified) that the Bankruptcy Code and Bankruptcy Rules address by creating an efficient claim reconciliation process.

41.    The Bankruptcy Code itself establishes what is essentially a class claim process by virtue of: (i) the requirement that the debtor provide notice of the bankruptcy filing itself to all creditors; (ii) the establishing of bar dates for creditors to file claims and notice requirements regarding same (which was June 16, 2020 [Docket No. 290]); (iii) the opportunity to file proofs of claim against the debtor's estate and (iv) the procedural safeguards the Bankruptcy Code and Bankruptcy Rules establish surrounding the claims objection process.

42.    Even putting aside Plaintiffs' contractual ineligibility to represent a class, they have failed to show how a class action adversary is superior to the claims resolution process built into the bankruptcy system, especially when the universe of employees is known and limited, and can be handled more efficiently by the chapter 7 trustee, who is an estate fiduciary that routinely reviews and reconciles claims.

25

43.     Accordingly, Plaintiffs have failed to establish that a class action is superior to the bankruptcy claims resolution process and have not met their burden under FRCP 23(b)(3).

**E.      The Trustee Moves the Court to Stay its Consideration of the Motion for Class Certification Until After It Decides the Pending Motion for Summary Judgment.**

44.     For judicial economy, the hearing on the Motion for Class Certification, should be deferred until after the Motion for Summary Judgment is adjudicated.  The primary defenses raised by the Trustee to the applicability of the WARN Act in these cases (i.e., (i)  that the Debtors filed these cases to liquidate and as liquidating fiduciaries, they were not "employers" and the WARN Act does not apply, and (ii) the Debtors' pre-mature termination of their GOB sales that started pre-bankruptcy and continued during the Chapter 11 was due to Covid-19, which both is a natural disaster and created an unforeseeable business circumstances, fall squarely in the exceptions to the WARN Act) are the subject of the Trustee's Motion for Summary Judgment and are almost fully briefed and before this Court.[30]

45.     If the Court grants the Motion for Summary Judgment, the ruling on these issues will apply to all of the employees, including the Plaintiffs and any potential members of the putative class, and if the Court denies it, then the Plaintiffs' case will proceed to trial and the outcome of the Plaintiffs' alleged claims and the Trustee's defenses will be decided and will apply to the case at large (and the Trustee can then administer the claims, vitiating the need for a class here).  In other words, there simply is no benefit to certifying the putative class at all— much less at this time.  Certification will lead to inefficiency, delay, and substantial additional

---

[30] The Plaintiffs filed their opposition on 12/3/21. The Trustee has 14 days to file his reply.

26

cost all to the detriment of the creditors of the estates. *See id.* at 621 ("[C]lass certification would adversely affect the administration of these cases adding layers of procedural and factual complexity that accompany class-based claims, siphoning the Debtors' resources and interfering with the orderly progression of the reorganization.").

46.    According, the Trustee asks that the Court put off conducting any hearing on and/or ruling on the Motion for Class Certification until it decides the Trustee's Motion for Summary Judgment.

27

## **CONCLUSION**

For the reasons set forth herein, the Trustee respectfully requests that the Court: (a) (i) deny the Motion for Class Certification, or, alternatively, (ii) grant the Cross-Motion and adjourn any future hearing on the Motion for Class Certification until such time as the Court rules on the Trustee's Motion for Summary Judgment, and (b) grant such other and further relief as is just and proper.

Respectfully Submitted,

Dated:    December 6, 2021            PACHULSKI STANG ZIEHL & JONES LLP
          Wilmington, Delaware

*/s/ Bradford Sandler*
Bradford J. Sandler (Bar No. 4142)
Beth Levine (New York Bar No. 2572246)
(admitted *pro hac vice*)
Colin R. Robinson (DE Bar No. 5524)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:    bsandler@pszjlaw.com
          blevine@pszjlaw.com
          crobinson@pszjlaw.com
          pkeane@pszjlaw.com

*Counsel to Alfred T. Giuliano, Chapter 7 Trustee to*
*Defendants Art Van Furniture, LLC, et al.*

28