# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ART VAN FURNITURE, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 20-10553 (CSS)<br><br>(Jointly Administered) |
| TODD STEWART and JENNIFER SAWLE on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ART VAN FURNITURE, LLC, *et al.*,<br><br>Defendants. | Adv. Proc. No. 20-50548 (CSS) |

## REPLY IN FURTHER SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION
## FOR SUMMARY JUDGMENT

**PACHULSKI STANG ZIEHL & JONES LLP**
Bradford J. Sandler (Bar No. 4142)
Beth Levine (New York Bar No. 2572246)
(admitted *pro hac vice*)
Colin R. Robinson (DE Bar No. 5524)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:   bsandler@pszjlaw.com
           blevine@pszjlaw.com
           crobinson@pszjlaw.com
           pkeane@pszjlaw.com

Counsel to Alfred T. Giuliano, Chapter 7 Trustee to Defendants Art Van Furniture, LLC, *et al.*

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

DOCS_LA:341146.8 05233/003

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................................1

I.  ARGUMENT.............................................................................................................................2

    A.  Plaintiffs Have Failed to Make Their *Prima Facie* Case and Are Wrong on Both the Law and the Facts with Regard to the Trustee's Affirmative Defenses. ...........................................................................................................................2

        1.  The Debtors Were Liquidating Fiduciaries at All Times Relevant, and Thus, Were Not Subject to the WARN Act Under Controlling Third Circuit Law. ..............................................................................................2

        2.  COVID-19 and Its Extraordinary Business and Social Effects Were Unforeseeable At All Relevant Times. .........................................................5

        3.  The Layoff Was Clearly "Due to" the COVID-19 Natural Disaster. ..........6

    B.  Plaintiffs Have Failed to Establish That a Determination of the Motion Should Be Deferred In Order to Permit Further Discovery. ..................................10

II. CONCLUSION........................................................................................................................12

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Benson v. Enterprise Leasing Co.,*
 2021 U.S. Dist. LEXIS 55137 (D. M.D. Fla. Feb. 4, 2021) ....................................................... 8

*Bostock v. Clayton Cty., Ga.*,
 140 S. Ct. 1731 (2020) ............................................................................................................... 7

*Easom v. US Well Servs*,
 527 F. Supp. 3d 898 (S.D. Tex. 2021) ....................................................................................... 6

*Shelton v. Lemons*,
 486 Fed.Appx. 395 (5th Cir. 2012) .......................................................................................... 11

*Simpson v. Panhandle S. Plains Fair Ass'n*,
 2001 U.S. Dist. LEXIS 15080 (N.D. Tex. Aug. 9, 2001) ........................................................ 10

*In re United Healthcare System, Inc.*,
 200 F.3d 170 (3d Cir. 1999)…………………………………………………..………  3

*Varela v. AE Liquidation, Inc. (In re AE Liquidation, Inc.)*,
 866 F.3d 515 (3d Cir. 2017) ...................................................................................................... 5

*Walsh v. Century City Doctors Hosp., LLC (In re Century City Doctors Hosp., LLC)*,
 417 B.R. 801, 804-05 (Bankr. C.D. Cal. 2009) ....................................................................... 10

**Statutes**

20 C.F.R. § 639.9(c)(2) .................................................................................................................. 7

29 U.S.C. § 2102 ............................................................................................................................ 2

29 U.S.C. § 2102(b)(2)(A) ............................................................................................................. 1

29 U.S.C. § 2102(b)(2)(B) ......................................................................................................... 1, 6

29 U.S.C. § 2104 ............................................................................................................................ 2

Alfred T. Giuliano, Chapter 7 Trustee (the "Trustee") to Art Van Furniture, LLC, Sam Levin, Inc. and related debtors (collectively, the "Debtors" or "Art Van") submits this Reply in support of his motion for summary judgment (the "Motion") [Adv. Docket No. 43] and in reply to Plaintiffs' Opposition to the Motion (the "Opposition") [Adv. Docket Nos. 48 & 49]. In further support of his Motion, the Trustee respectfully states as follows.

## PRELIMINARY STATEMENT

1. It has been said that "When the facts are against you, argue the law. When the law is against you, argue the facts. When the law and the facts are against you, pound the table and yell loudly."[1] Plaintiffs are attempting to pound the table because both the controlling law and the undisputed facts are against them.

2. In his Memorandum in Support of Chapter 7 Trustee's Motion for Summary Judgment (the "Memorandum")[2] [Adv. Docket No. 44], the Trustee established that the Defendants were entitled to summary judgment because (1) Plaintiffs cannot meet their burden of showing that Art Van and SLI were employers as of the Date of the Layoff; (2) even if the Debtors were subject to the WARN Act as of the date of the Layoff, which they were not, they are subject to the unforeseeable business circumstances exception set forth in in 29 U.S.C. § 2102(b)(2)(A); and (3) assuming *arguendo* the Debtors were subject to the WARN Act as of the date of the Layoff, which they were not, they are subject to the natural disaster exception set forth in 29 U.S.C. § 2102(b)(2)(B). Confronted with incontrovertible facts and law, and with no other ammunition,

---

[1] This statement has been commonly attributed to the American poet Carl Sandburg.

[2] All capitalized terms not defined herein shall have the meaning ascribed to them in the Motion or Memorandum, as applicable.

1

Plaintiffs have pounded on the table.  However, Plaintiffs' assertions in their Opposition are a transparent attempt to obfuscate the salient issues that they do not and cannot address because they cannot change the multiple clear, undisputed, dispositive points of law and facts applicable to this adversary proceeding, which mandate summary judgment in the Trustee's favor.  Moreover, the Plaintiffs failed to specify any discovery that would overcome the Motion.  Accordingly, their cross-motion to defer a ruling on the Trustee's Motion must be denied.

## I.     ARGUMENT

**A.     Plaintiffs Have Failed to Make Their *Prima Facie* Case and Are Wrong on Both the Law and the Facts with Regard to the Trustee's Affirmative Defenses.**

**1.     The Debtors Were Liquidating Fiduciaries at All Times Relevant, and Thus, Were Not Subject to the WARN Act Under Controlling Third Circuit Law.**

3.     To prove a WARN Act violation, Plaintiffs must show that Art Van was an "employer"; otherwise, Plaintiffs have not established their *prima facie* case for WARN Act liability (29 U.S.C. §§ 2102, 2104).  Under controlling Third Circuit law, a "liquidating fiduciary" is not an "employer."  There can be no reasonable dispute that the Debtors were at all relevant times liquidating, as opposed to reorganizing, in their Chapter 11 Cases.  Indeed, it is undisputed that the Debtors not only publicly announced, but also started their liquidation even before they filed for Chapter 11.  The evidence already admitted in these bankruptcy cases clearly states that the Debtors filed for Chapter 11 to effectuate an orderly wind down, which they commenced prior to the filing of Chapter 11.  *See* Memorandum, at 4-8 (¶¶ 14-22 (citations to Ladd Declaration and Sandler Declaration and exhibits thereto).  They were liquidating fiduciaries in both words and deeds prior to the Petition Date and at the time of the March 20, 2020 Layoff.  Indeed,

2

notwithstanding their Opposition, Plaintiffs admitted this exact point in their Complaint: Even before the bankruptcy filing, "Debtors began to execute on its planned liquidation." (Complaint, attached as **Exhibit Y** to Sandler Declaration [Adv. Docket No. 46], at ¶ 2.) As a matter of fact and law, the Debtors were not "employers" under the WARN Act as of the date of the Layoff, and, accordingly, cannot be held liable under the WARN Act.

4. While Plaintiffs would ask this Court to ignore controlling Third Circuit law, they cannot escape the well-settled, reasoned, and binding principles in *United Healthcare* that the Third Circuit laid out to protect companies that are liquidating. In the instant matter, as in the *United Healthcare* case, the Debtors' actions from the very beginning of the Chapter 11 Cases (and even before then) evidenced a clear intent to liquidate the Debtors' business, and not to operate their business "in the normal commercial sense" (54 Fed. Reg. 16042, 16045 (Thurs., April 20, 1989)). *See United Healthcare*, 200 F.3d 170, 178 (3d Cir. 1999) ("We recognize that United Healthcare filed for Chapter 11 bankruptcy, ordinarily used to reorganize, rather than Chapter 7 bankruptcy, generally used to liquidate. But … United Healthcare's actions from the time it filed its Chapter 11 petition throughout the proceedings clearly demonstrate its intent to liquidate.").

5. As detailed in the Memorandum (and as the prior testimony in these cases admitted in evidence indicates), all of the Debtors' efforts at reorganizing as a going concern occurred prepetition, when they hired advisors to reach out to potential buyers and investors. Those efforts failed prior to the bankruptcy filing. As a result of this failure, and prior to the Petition Date, the Debtors decided to liquidate and began an orderly wind-down process, comprised of going-out-of-business (GOB) sales (that were commenced pre-petition) and the anticipated bulk sale of the

SLI stores to a third party buyer. *See* Memorandum, at 4-8 (¶¶ 14-22 (citations to Ladd Declaration and Sandler Declaration and exhibits thereto [Adv. Docket No. 46]). Indeed, on March 5, 2020, Art Van had publicly announced that it was liquidating and going out of business. *See Sandler Declaration,* ¶ 5 and Exhibit D thereto; "Art Van Furniture to Close All Stores; Going Out of Business Sales to Start Friday, March 6," *PRNewswire* (March 5, 2020), available at https://www.prnewswire.com/news-releases/art-van-furniture-to-close-all-stores-going-out-of-business-sales-to-start-friday-march-6-301017308.html (attached hereto as **Exhibit 1**) (Art Van "announced today it has made the difficult decision to wind down operations and begin liquidation sales"); M. Feighan, *et al.*, "'Heartbroken,' 'angry': Art Van closing shocks customers, city leaders," *The Detroit News* (March 5, 2020), available at https://www.detroitnews.com/story/news/local/michigan/2020/03/05/art-van-close-all-stores-start-going-out-business-sale-friday/4962367002/ (attached hereto as **Exhibit 2**) ("Art Van Furniture, a Metro Detroit institution and one of the largest furniture retailers in the Midwest, will close all of its company-owned stores and liquidate its inventory …."). The liquidation process continued post-Petition Date as the evidence in this case clearly establishes, and as explained in the Motion, as of the Petition Date, and prior to the March 20, 2020 Layoff, the only business activities to be conducted by the Debtors were those necessary to liquidate their assets to pay off their creditors.³ As Plaintiffs fail to establish that the Debtors were "employers" under the WARN

---

³ Plaintiffs' focus in their Opposition on the "going concern sale" of certain stores and other assets pursuant to the failed Levin Sale is completely misplaced. Whether terms such as "ordinary course of business" and "going concern" might have been used at times in connection with the Levin Sale is irrelevant. To the extent such terms were used, they do not take away from the actual substance of what was occurring: The Debtors were simply preserving the value of the Levin Sale stores for purposes of the sale to the third party, as evidenced by, among other things, the Levin DIP Loan. As discussed in the Memorandum, because the Debtors had no money to operate these stores, Levin agreed to extend the Levin DIP Loan to the Debtors to directly facilitate the Levin Sale, which funding would be

Act, an essential element of their *prima facie* case, the Court must grant summary judgment against them.[4]

### 2. COVID-19 and Its Extraordinary Business and Social Effects Were Unforeseeable At All Relevant Times.

6. Even if Plaintiffs were able to prove their *prima facie* case, which they cannot, the Debtors are not liable to Plaintiffs because the Debtors' inability to conduct the GOB Sales and other parts of the Planned Liquidation Process due to the COVID-19 pandemic and the attendant extraordinary government-ordered business closures and government-ordered shelter-in-place requirements constituted an unforeseeable business circumstance under the WARN Act.

7. Tellingly, in the Opposition, Plaintiffs do not mention, let alone dispute that, under Third Circuit law (*see, e.g., Varela v. AE Liquidation, Inc. (In re AE Liquidation, Inc.)*, 866 F.3d 515, 528 (3d Cir. 2017), a layoff becomes reasonably foreseeable when it becomes "probable" (more likely than not) that it would occur. That is, <u>a clear probability of layoffs</u> is necessary to trigger the WARN Act notice requirement. It cannot be colorably argued that, as of January 2020 (60 days prior to the Layoff), the subsequent unprecedented, devastating impact of the pandemic on the Debtors' stores and financial condition was "probable." Furthermore, it was not merely a downturn in the economy as a result of COVID-19 that "caused" the March 20, 2020 Layoff. The

---

repaid with and deducted from the sales proceeds of the Levin Sale. Thus, this financing transaction and the Debtors' related alleged "operation" of the subject stores were done to preserve the value of these stores until consummation of the Levin Sale for the benefit of the third party buyer. The foregoing cannot be considered to be the "normal" operation of a business.

[4] Plaintiffs appear to argue that the Trustee must prove that the Planned Liquidation Process **caused** the March 20, 2020 Layoff in order to invoke the "liquidating fiduciary" doctrine. This is not so. Establishing that the Debtors were "employers" under the WARN Act is an element of Plaintiff's *prima facie* case. If they were not "employers" on March 20, 2020, the inquiry ends. The Trustee does not have to establish causation.

5

Governor of the State of Pennsylvania literally shut down the business operations of the entire state at 8:00 p.m. on March 19, 2020. Plaintiffs can Monday morning quarterback the Debtors' decision to terminate their employees (as opposed to furlough them), but the fact remains that the restrictions on retail operations in Pennsylvania were not lifted until June 5, 2020,[5] while similar restrictions in Michigan were rescinded around the same time on June 4, 2020.[6]

### 3.    The Layoff Was Clearly "Due to" the COVID-19 Natural Disaster.

8.      Even if Plaintiffs were able to prove their *prima facie* case, which they cannot, the Debtors were not required to give any notice because the March 20, 2020 Layoff was due to the COVID-19 pandemic -- a "natural disaster" under the WARN Act as discussed in the Memorandum (at 23-25). Strikingly, instead of simply referring to natural disasters, the WARN Act in fact refers more broadly to "any form of natural disaster" -- a phrase which plainly and logically supports a broad interpretation of "natural disaster."

9.      The Debtors' Layoff was clearly "due to" the COVID-19 pandemic.[7] As discussed in the Memorandum, the District Court for the Southern District of Texas recently held that the "but-for" standard of causation applies to the natural disaster exception. In *Easom v. US Well Servs*, 527 F. Supp. 3d 898 (S.D. Tex. 2021), the District Court concluded that "due to" means

---

[5] Retail businesses in certain counties in Pennsylvania, which excluded the more populous counties like Philadelphia County, were allowed to reopen under certain restrictions starting on May 8, 2020, with additional counties permitted to reopen on certain dates thereafter. It was not until June 5, 2020 when all retailers across the state, in all counties, were allowed to reopen. *See Amendment to Order of Governor of Commonwealth of Pennsylvania for Limited Opening of Businesses, Lifting Stay at Home Requirements, and Continued Aggressive Mitigation Efforts*, available at https://www.governor.pa.gov/wp-content/uploads/2020/06/20200604-TWW-amendment-to-yellow-phase-order.pdf (attached hereto as **Exhibit 3**).

[6] *See* Executive Order No. 2020-110, available at https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-530620--,00.html (attached hereto as **Exhibit 4**).

[7] The Natural Disaster Exception applies when the mass layoff is "due to" a natural disaster. 29 U.S.C. § 2102(b)(2)(B).

6

"but for" causation. *Id.* at 915 ("In sum, the WARN Act's language, structure, and legislative history, as well as case law interpreting similar statutory language, support finding that the natural-disaster exception uses but-for causation standards. The COVID-19 pandemic need not be the direct or sole cause of the layoffs for the natural-disaster exception to apply."). The *Easom* court rejected the argument (advanced by Plaintiffs in this case) that the Department of Labor's ("DOL") implementing regulation (20 C.F.R. § 639.9(c)(2)) requires employers to prove that the natural disaster was the "proximate cause" of the layoff. *Id*. at 913 ("The fact that Congress rejected the word 'directly' not only cuts against the Department of Labor's regulations, it cuts against proximate causation as the standard."). But-for causation is established whenever a particular outcome would not have happened "but for" the purported cause. The "but-for" test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a "but-for" cause. *Bostock v. Clayton Cty., Ga*., 140 S. Ct. 1731, 1739 (2020).

10.     But for COVID-19, the Debtors would have completed the Planned Liquidation Process as originally planned, including the provision of adequate notice of the Layoff.  But for the threat of infection and death from COVID-19, the Debtors would not have issued the COVID WARN Notice and would not have terminated the Plaintiffs on March 20, 2020.[8]  Plaintiffs admit that the pandemic was a but-for cause. *See* Opposition at 22 ("It was not COVID-19 alone, but *COVID-19 plus something else that caused* Defendants to permanently terminate its workforce on March 19." (emphasis added)).

---

[8] Based on the foregoing, Plaintiffs' speculations in the Opposition about the Debtors' board of directors at the time of the Layoff (which speculations are part of Plaintiffs' transparent effort to muddy or taint the waters in response to the clear facts and law discussed herein and in the Motion) are completely irrelevant. Plain and simple, as acknowledged by Plaintiffs in the Opposition, COVID-19 was a but-for cause of the Layoff.

7

11. Even if a more stringent standard of causation under the WARN Act were required, however, it has been met here. As the Trustee pointed out in his Memorandum, the applicable causation standard has been the subject of recent litigation. *See* Memorandum at 26 and n.48. Specifically, in *Benson v. Enterprise Leasing Co.,* 2021 U.S. Dist. LEXIS 55137 (D. M.D. Fla. Feb. 4, 2021), the District Court denied the defendant's motion to dismiss where the defendant did not allege in the complaint that the layoff was a "direct result" of COVID-19 and then certified the causation standard for interlocutory appeal. On appeal, the Department of Justice (the "DOJ") defended the DOL's implementing regulation, arguing that an employer must show that the layoff was a "direct result" of the natural disaster. *See Benson v. Enterprise Leasing Co.*, No. 21-11911, Brief of the United States as Amicus Curiae (the "DOJ Brief") (attached as Exhibit 3 to the Opposition). The case was settled before the Court of Appeals could rule on the issue.

12. Even assuming *arguendo* that the Trustee must show that the March 20, 2020 Layoff was a "direct result" of the pandemic, it clearly was according to the DOL's own interpretation. In the DOJ Brief, the DOJ stated, "By requiring a direct causal connection between the natural disaster and the mass layoff, the Secretary's interpretation ensures that the exception will not permit employers to rely on ***the lingering or remote effects of*** a natural disaster to evade the WARN Act's notice requirements where notice would have been practicable. At the same time it provides relief to employers where a natural disaster has a ***direct and immediate adverse impact on an employer's business, such that an employer had to immediately shut its plant or layoff its employees***." DOJ Brief at 17. The Trustee's Memorandum and the undisputed facts clearly establish:

8

      (i)      the Debtors intended to conduct an orderly liquidation of their business over a period of 60 days;

      (ii)      the Debtors gave the GOB WARN Notice on March 5, 2020 pursuant to which their employees would have had 60 days-notice of their eventual layoff; and

      (iii) the Debtors diligently executed on their Planned Liquidation Process by conducting GOB Sales, filing the Chapter 11 Cases, and seeking approval of the GOB Sales and the Levin Sale;

      (iv)      however, in two weeks'-time, the pandemic deepened so dramatically that on March 19, 2020, the Governor of Pennsylvania ordered all nonessential businesses (including the Debtors) to close by 8:00 p.m. that night.

The March 20, 2020 Layoff was not the result of a "lingering or remote effect of a natural disaster." It was an immediate, direct, acute heart attack caused by COVID-19.

      13.      Accordingly, while the Court can easily find that the Debtors were liquidating fiduciaries and thus not "employers" under controlling Third Circuit precedent, even if it chooses to go further into the analysis, the Court can find that the devastating economic impact of the global pandemic was unforeseeable at the relevant times, and that even if not unforeseeable, the Debtors are not subject to the WARN Act because the Layoff was "due to" the natural disaster of COVID-19.

B. **Plaintiffs Have Failed to Establish That a Determination of the Motion Should Be Deferred In Order to Permit Further Discovery.**

14. Plaintiffs' request for additional discovery is baseless and a transparent attempt at gamesmanship. As discussed above and in the Memorandum, there can be no reasonable dispute about the material dispositive facts, including that the Debtors were indeed liquidating their business as of the Petition Date and as of the Layoff. *See, e.g., Walsh v. Century City Doctors Hosp., LLC (In re Century City Doctors Hosp., LLC)*, 417 B.R. 801, 804-05 (Bankr. C.D. Cal. 2009), *aff'd* 2010 Bankr. LEXIS 5048 (B.A.P. 9th Cir. Oct. 29, 2010) (previously cited in the Memorandum; holding a chapter 7 trustee who operated a hospital for a brief period post-petition before terminating its employees was not an "employer" under the WARN Act based on *United Healthcare* where it was clear from the record that the "trustee's intentions have consistently been to close the hospital business at the earliest reasonable time and to liquidate its assets for the benefit of its creditors. The trustee only operated [the debtor] for approximately a week from the date of filing, and the trustee's brief operation of [the debtor] was not for any commercial purpose.").

15. Notwithstanding the foregoing, in order to justify additional discovery in any event, Plaintiffs must specify the discovery they seek that can overcome the Motion -- vague, generalized assertions by Plaintiffs that discovery will lead to facts in their favor do not justify denying the Trustee's Motion.[9] *See, e.g., Simpson v. Panhandle S. Plains Fair Ass'n*, 2001 U.S. Dist. LEXIS

---

[9] It is disingenuous for Plaintiffs to complain in the Opposition about the purportedly little discovery obtained so far in this action. The Debtors' intentions and Planned Liquidation Process are evidenced by the voluminous publicly filed documents that are part of the record in these cases and have long been available to Plaintiffs on the Court's docket in the bankruptcy cases. In addition, counsel to Plaintiffs appeared at numerous hearings during the Chapter 11 Cases. (*See* U.S. Bankruptcy Court - District of Delaware Confirmed Telephonic Appearance Schedule (Honorable Christopher S. Sontchi) in Art Van's Chapter 11 case for hearing dates March 26, 2021, April 3, 2021, and April 6, 2021 (Docket Nos. 192, 240, 262 in No. 20-10553.) Finally, the Trustee provided informal discovery to counsel both prior to, in connection with and after the recent mediation.

10

15080, at *4-*5 (N.D. Tex. Aug. 9, 2001) ("the summary judgment rules do not require that discovery take place before a motion for summary judgment can be granted"; for a proper request for continuance under Fed.R.Civ.P. 56(f), the nonmoving party must "(1) present specific facts why he was unable to respond substantively in opposition to the motion; and, (2) specifically demonstrate how not granting the summary judgment or granting additional time for discovery will rebut the moving party's evidence that there is no genuine issue of material fact. [citations omitted]  In other words, the party opposing summary judgment 'must show how the additional discovery will defeat the summary judgment motion.' [citation omitted]  'Vague assertions by the non-moving party that discovery will uncover unspecified facts are not enough to trigger Rule 56(f) protection.'"); *Shelton v. Lemons*, 486 Fed.Appx. 395, 396-97 (5th Cir. 2012) (similar). Here, all Plaintiffs say in support of their cross motion to defer is that:

> Plaintiffs have not received documents, or been able to take depositions, concerning the Defendants' purported liquidation process, the operations of the stores during the pendency of the bankruptcy, Defendants' efforts to obtain financing, and the decision-making process that led to the termination of Defendants' employees.

Opposition at 6.

16.     This is no more than a "vague assertion" that "discovery will uncover unspecified facts," and as such, is patently insufficient.  All of the relevant undisputed facts are known.  The Court lived through this case from the Debtors' first day in bankruptcy when the Debtors filed for Chapter 11 with a GOB motion in hand to effectuate and continue their prepetition liquidation process, to dealing with the Debtors' response to the global economic shutdown in response to the global pandemic, to the conversion of these cases from Chapter 11 to Chapter 7.  Although substantial discovery has taken place, no amount of additional discovery will change this point:

11

the evidentiary record is full and supports the facts set forth in the Motion, and Plaintiffs admit virtually all the facts supported by the evidence. Applying well-settled and binding law to those undisputed facts clearly supports the granting of summary judgment in favor of the Trustee. Accordingly, the Court should deny Plaintiffs' cross-motion for a continuance to allow even more discovery, and grant the Trustee's Motion in all respects.

## II.     CONCLUSION

For the reasons set forth herein and in the Motion, the Trustee respectfully requests that the Court grant the Motion, enter judgment in his favor, and grant such other and further relief as the Court deems appropriate.

**[THE BALANCE OF THIS PAGE INTENTIONALLY LEFT BLANK.]**

Respectfully Submitted,

Dated: December 17, 2021
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Bradford Sandler*
Bradford J. Sandler (Bar No. 4142)
Beth Levine (New York Bar No. 2572246)
(admitted *pro hac vice*)
Colin R. Robinson (DE Bar No. 5524)
Peter J. Keane (DE Bar No. 5503)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email:   bsandler@pszjlaw.com
blevine@pszjlaw.com
crobinson@pszjlaw.com
pkeane@pszjlaw.com

Counsel to Alfred T. Giuliano, Chapter 7 Trustee to Defendants Art Van Furniture, LLC, *et al.*