# EXHIBIT 4

# Executive Order 2020-110: Temporary restrictions on certain events, gatherings, and businesses - RESCINDED

**EXECUTIVE ORDER**

**No. 2020-110**

**Temporary restrictions on certain events, gatherings, and businesses**

**Rescission of Executive Orders 2020-69 and 2020-96**

The novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person. There is currently no approved vaccine or antiviral treatment for this disease.

On March 10, 2020, the Department of Health and Human Services identified the first two presumptive-positive cases of COVID-19 in Michigan. On that same day, I issued Executive Order 2020-4. This order declared a state of emergency across the state of Michigan under section 1 of article 5 of the Michigan Constitution of 1963, the Emergency Management Act, 1976 PA 390, as amended (EMA), MCL 30.401 et seq., and the Emergency Powers of the Governor Act of 1945, 1945 PA 302, as amended (EPGA), MCL 10.31 et seq.

Since then, the virus spread across Michigan, bringing deaths in the thousands, confirmed cases in the tens of thousands, and deep disruption to this state's economy, homes, and educational, civic, social, and religious institutions. On April 1, 2020, in response to the widespread and

severe health, economic, and social harms posed by the COVID-19 pandemic, I issued Executive Order 2020-33. This order expanded on Executive Order 2020-4 and declared both a state of emergency and a state of disaster across the State of Michigan under section 1 of article 5 of the Michigan Constitution of 1963, the Emergency Management Act, and the Emergency Powers of the Governor Act of 1945. And on April 30, 2020, finding that COVID-19 had created emergency and disaster conditions across the State of Michigan, I issued Executive Order 2020-67 to continue the emergency declaration under the Emergency Powers of the Governor Act, as well as Executive Order 2020-68 to issue new emergency and disaster declarations under the Emergency Management Act.

Those executive orders have been challenged in *Michigan House of Representatives and Michigan Senate v Whitmer*. On May 21, 2020, the Court of Claims ruled that Executive Order 2020-67 is a valid exercise of authority under the Emergency Powers of the Governor Act but that Executive Order 2020-68 is not a valid exercise of authority under the Emergency Management Act. Both of those rulings are being challenged on appeal.

On May 22, 2020, I issued Executive Order 2020-99, again finding that the COVID-19 pandemic constitutes a disaster and emergency throughout the State of Michigan. That order constituted a state of emergency declaration under the Emergency Powers of the Governor Act of 1945. And, to the extent the governor may declare a state of emergency and a state of disaster under the Emergency Management Act when emergency and disaster conditions exist yet the legislature has declined to grant an extension request, that order also constituted a state of emergency and state of disaster declaration under that act.

The Emergency Powers of the Governor Act provides a sufficient legal basis for issuing this executive order. In relevant part, it provides that, after declaring a state of emergency, "the governor may promulgate reasonable orders, rules, and regulations as he or she considers necessary to protect life and property or to bring the emergency situation within the affected area under control." MCL 10.31(1).

Nevertheless, subject to the ongoing litigation and the possibility that current rulings may be overturned or otherwise altered on appeal, I also invoke the Emergency Management Act as a basis for executive action to combat the spread of COVID-19 and mitigate the effects of this emergency on the people of Michigan, with the intent to preserve the rights and protections provided by the EMA. The EMA vests the governor with broad powers and duties to "cop[e] with

dangers to this state or the people of this state presented by a disaster or emergency," which the governor may implement through "executive orders, proclamations, and directives having the force and effect of law." MCL 30.403(1)–(2). This executive order falls within the scope of those powers and duties, and to the extent the governor may declare a state of emergency and a state of disaster under the Emergency Management Act when emergency and disaster conditions exist yet the legislature has not granted an extension request, they too provide a sufficient legal basis for this order.

To suppress the spread of COVID-19, to prevent the state's health care system from being overwhelmed, to allow time for the production of critical test kits, ventilators, and personal protective equipment, to establish the public health infrastructure necessary to contain the spread of infection, and to avoid needless deaths, it was reasonable and necessary to direct residents to remain at home or in their place of residence to the maximum extent feasible. To that end, on March 23, 2020, I issued Executive Order 2020-21, ordering all people in Michigan to stay home and stay safe. In Executive Orders 2020-42, 2020-59, 2020-70, 2020-77, 2020-92, and 2020-96, I extended that initial order, modifying its scope as needed and appropriate to match the ever-changing circumstances presented by this pandemic.

The measures put in place by these executive orders have been effective: the number of new confirmed cases each day continues to drop. Although the virus remains aggressive and persistent—on May 31, 2020, Michigan reported 57,397 confirmed cases and 5,491 deaths—the strain on our health care system has begun to relent, even as our testing capacity has increased. We are now in the process of gradually resuming in-person work and activities. In so doing, however, we must move with care, patience, and vigilance, recognizing the grave harm that this virus continues to inflict on our state and how quickly our progress in suppressing it can be undone.

With this order, I find it reasonable and necessary to move the state to Stage 4 of the Michigan Safe Start Plan. As a result, Michiganders are no longer required to stay home. Instead, certain businesses will remain closed and specific activities that present a heightened risk of infection will remain prohibited. Any work that is capable of being performed remotely must be performed remotely.

Under this order, retailers will be allowed to resume operations on June 4. Restaurants and bars may reopen fully on June 8. Swimming pools and day camps for kids will also be permitted to reopen on the same day. Those businesses and activities will be subject to safety guidance to

mitigate the risk of infection. Other businesses and activities that necessarily involve close contact and shared surfaces, including gyms, hair salons, indoor theaters, tattoo parlors, casinos, and similar establishments, will remain closed for the time being.

Michiganders must continue to wear face coverings when in enclosed public spaces and should continue to take all reasonable precautions to protect themselves, their co-workers, their loved ones, and their communities. Indoor social gatherings and events of more than 10 people are prohibited. Outdoor social gatherings and events are permitted so long as people maintain six feet of distance from one another and the assemblage consists of no more than 100 people.

Acting under the Michigan Constitution of 1963 and Michigan law, I order the following:

1. For purposes of this order, Michigan comprises eight separate regions.

    a. Region 1 includes the following counties: Monroe, Washtenaw, Livingston, Genesee, Lapeer, Saint Clair, Oakland, Macomb, and Wayne.

    b. Region 2 includes the following counties: Mason, Lake, Osceola, Clare, Oceana, Newaygo, Mecosta, Isabella, Muskegon, Montcalm, Ottawa, Kent, and Ionia.

    c. Region 3 includes the following counties: Allegan, Barry, Van Buren, Kalamazoo, Calhoun, Berrien, Cass, Saint Joseph, and Branch.

    d. Region 4 includes the following counties: Oscoda, Alcona, Ogemaw, Iosco, Gladwin, Arenac, Midland, Bay, Saginaw, Tuscola, Sanilac, and Huron.

    e. Region 5 includes the following counties: Gratiot, Clinton, Shiawassee, Eaton, and Ingham.

   f. Region 6 includes the following counties: Manistee, Wexford, Missaukee, Roscommon, Benzie, Grand Traverse, Kalkaska, Crawford, Leelanau, Antrim, Otsego, Montmorency, Alpena, Charlevoix, Cheboygan, Presque Isle, and Emmet.

   g. Region 7 includes the following counties: Hillsdale, Lenawee, and Jackson.

   h. Region 8 includes the following counties: Gogebic, Ontonagon, Houghton, Keweenaw, Iron, Baraga, Dickinson, Marquette, Menominee, Delta, Alger, Schoolcraft, Luce, Mackinac, and Chippewa.

2. Any work that is capable of being performed remotely (i.e., without the worker leaving his or her home or place of residence) must be performed remotely.

3. Any business or operation that requires its employees to leave their home or place of residence for work is subject to the rules on workplace safeguards in Executive Order 2020-97 or any order that may follow from it.

4. Any individual who leaves his or her home or place of residence must:

   a. Follow social distancing measures recommended by the Centers for Disease Control and Prevention ("CDC"), including remaining at least six feet from people from outside the individual's household to the extent feasible under the circumstances.

   b. Wear a face covering over his or her nose and mouth—such as a homemade mask, scarf, bandana, or handkerchief—when in any enclosed public space, unless the individual is unable medically to tolerate a face covering.

      1. An individual may be required to temporarily remove a face covering upon entering an enclosed public space for identification purposes. An individual may also remove a face

covering to eat or drink when seated at a restaurant or bar.

2. Businesses and building owners, and those authorized to act on their behalf, are permitted to deny entry or access to any individual who refuses to comply with the rule in this subsection (b). Businesses and building owners will not be subject to a claim that they have violated the covenant of quiet enjoyment, to a claim of frustration of purpose, or to similar claims for denying entry or access to a person who refuses to comply with this subsection (b).

3. Supplies of N95 masks and surgical masks should generally be reserved, for now, for health care professionals, first responders (e.g., police officers, fire fighters, paramedics), and other critical workers who interact with the public.

4. The protections against discrimination in the Elliott-Larsen Civil Rights Act, 1976 PA 453, as amended, MCL 37.2101 et seq., and any other protections against discrimination in Michigan law, apply in full force to individuals who wear a face covering under this order.

5. Indoor social gatherings and events among persons not part of a single household are permitted, but may not exceed 10 people.

6. Outdoor social gatherings and events among persons not part of a single household are permitted, but only to the extent that:

a. The gathering or event does not exceed 100 people, and



b. People not part of the same household maintain six feet of distance from one another.

7. Unless otherwise prohibited by local regulation, outdoor parks and recreational facilities may be open, provided that they make any reasonable modifications necessary to enable employees and patrons not part of the same household to maintain six feet of distance from one another, and provided that areas in which social distancing cannot be

maintained be closed, subject to guidance issued by the Department of Health and Human Services.

8. Unless otherwise prohibited by local regulation, public swimming pools, as defined by MCL 333.12521(d), may open as of June 8, 2020, provided that they are outdoors and limit capacity to 50% of the bather capacity limits described in Rule 325.2193 of the Michigan Administrative Code, and subject to guidance issued by the Department of Health and Human Services. Indoor public swimming pools must remain closed.

9. Day camps for children, as defined by Rule 400.11101(i) of the Michigan Administrative Code, may open as of June 8, 2020, subject to guidance issued by the Department of Licensing and Regulatory Affairs. Residential, travel, and troop camps within the meaning of Rule 400.11101(n), (p), or (q) of the Michigan Administrative Code must remain closed for the time being.

10. Unless otherwise prohibited by local regulation, libraries and museums may open as of June 8, 2020, subject to the rules governing retail stores described in Executive Order 2020-97 or any order that may follow from it.

11. Stores that were closed under Executive Order 2020-96 (or that were open only by appointment under the same order) must remain closed to the public (or open only by appointment) until June 4 at 12:01 am. Such stores may then resume normal operations, subject to local regulation and to the capacity constraints and workplace standards described in Executive Order 2020-97 or any order that may follow from it.

12. Subject to the exceptions in section 14, the following places are closed to ingress, egress, use, and occupancy by members of the public:

    a. Indoor theaters, cinemas, and performance venues.

    b. Indoor gymnasiums, fitness centers, recreation centers, sports facilities, exercise facilities, exercise studios, and the like.



   c. Facilities offering non-essential personal care services, including hair, nail, tanning, massage, traditional spa, tattoo, body art, and piercing services, and similar personal care services that involve close contact of persons.

   d. Casinos licensed by the Michigan Gaming Control Board, racetracks licensed by the Michigan Gaming Control Board, and Millionaire Parties licensed by the Michigan Gaming Control Board.

   e. Indoor services or facilities, or outdoor services or facilities involving close contact of persons, for amusement or other recreational or entertainment purposes, such as amusement parks, arcades, bingo halls, bowling alleys, indoor climbing facilities, indoor dance areas, skating rinks, trampoline parks, and other similar recreational or entertainment facilities.

13. Unless otherwise prohibited by local regulation, restaurants, food courts, cafes, coffeehouses, bars, taverns, brew pubs, breweries, microbreweries, distilleries, wineries, tasting rooms, special licensees, clubs, and like places may be open to the public as follows:

   a. For delivery service, window service, walk-up service, drive-through service, or drive-up service, and may permit up to five members of the public at one time for the purpose of picking up their food or beverage orders, so long as those individuals are at least six feet apart from one another while on premises.

   

   b. In Regions 1, 2, 3, 4, 5, and 7, beginning at 12:01 am on June 8, 2020, for outdoor and indoor seating, subject to the capacity constraints and workplace standards described in Executive Order 2020-97 or any order that may follow from it.

   c. In Regions 6 and 8, for outdoor and indoor seating, subject to the capacity constraints and workplace standards described in Executive Order 2020-97 or any order that may follow from it.

14. The restrictions imposed by sections 12 and 13 of this order do not apply to any of the following:

    a. Outdoor fitness classes, athletic practices, training sessions, or games, provided that coaches, spectators, and participants not from the same household maintain six feet of distance from one another at all times during such activities, and that equipment and supplies are shared to the minimum extent possible and are subject to frequent and thorough disinfection and cleaning.

    b. Services necessary for medical treatment as determined by a licensed medical provider.

    c. Health care facilities, residential care facilities, congregate care facilities, and juvenile justice facilities.

    d. Crisis shelters or similar institutions.

    e. Food courts inside the secured zones of airports.

    f. Employees, contractors, vendors, or suppliers who enter, use, or occupy the places described in section 12 of this order in their professional capacity.

15. Nothing in this order should be taken to interfere with or infringe on the powers of the legislative and judicial branches to perform their constitutional duties or exercise their authority. Similarly, nothing in this order shall be taken to abridge protections guaranteed by the state or federal constitution under these emergency circumstances.

16. Consistent with prior guidance, neither a place of religious worship nor its owner is subject to penalty under section 19 of this order for allowing religious worship at such place. No individual is subject to penalty under section 19 of this order for engaging in religious worship at a place of religious worship, or for violating the face covering requirement of section 4(b) of this order.

17. Executive Orders 2020-69 and 2020-96 are rescinded. Except as specified, nothing in this order supersedes any other executive order. This order takes effect immediately unless otherwise specified.

18. In determining whether to maintain, intensify, or relax the restrictions in this order, I will consider, among other things, (1) data on COVID-19 infections and the disease's rate of spread; (2) whether sufficient medical personnel, hospital beds, and ventilators exist to meet anticipated medical need; (3) the availability of personal protective equipment for the health care workforce; (4) the state's capacity to test for COVID-19 cases and isolate infected people; and (5) economic conditions in the state.

19. Consistent with MCL 10.33 and MCL 30.405(3), a willful violation of this order is a misdemeanor.

Given under my hand and the Great Seal of the State of Michigan.



- **MICHIGAN.GOV HOME**
- **ADA**
- **MICHIGAN NEWS**
- **POLICIES**

**COPYRIGHT 2021 STATE OF MICHIGAN**