## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ART VAN FURNITURE, LLC., *et al.,*[1]<br><br>               Debtors. | Chapter 7<br><br>Case No. 20-10553 (CSS)<br><br>Jointly Administered |
| TODD STEWART and JENNIFER SAWLE on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br>v.<br><br>ART VAN FURNITURE, LLC, et al.,<br><br>               Debtors. | Adv. Pro. No. 20-50548 (CSS) |

## PLAINTIFFS' REPLY
## IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION

Michael J. Joyce (No. 4563)
**JOYCE, LLC**
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone: (302)-388-1944
Email: mjoyce@mjlawoffices.com

OF COUNSEL:

René S. Roupinian (*admitted pro hac vice*)

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Art Van Furniture, LLC (9205); AVF Holding Company, Inc. (0291); AVCE, LLC (2509); AVF Holdings I, LLC (2537); AVF Holdings II, LLC (7472); AVF Parent, LLC (3451); Levin Parent, LLC (8052); Art Van Furniture of Canada, LLC (9491); AV Pure Sleep Franchising, LLC (8968); AVF Franchising, LLC (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

Jack A. Raisner (*admitted pro hac vice*)
**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801
New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

*Attorneys for Plaintiffs and the putative class*

# TABLE OF CONTENTS

ARGUMENT ............................................................................................................... 1

I.  Neither The Purported Class Waiver, Nor The Arbitration Policy Bar Class Certification ..... 1

A.  The WARN Claim Is Not Subject to The Arbitration Policy or Its Class Waiver .............. 1

B.  The Trustee Has Waived Enforcement of The Arbitration Policy ...................................... 4

II.  The Trustee Has Not Found Any Deficiency in Plaintiffs' Argument for Class

Certification ..................................................................................................................... 6

A.  Plaintiffs Satisfy Numerosity under Rule 23(a) .................................................................. 6

B.  The Class Action Device is Superior to the Bankruptcy Claims Process ........................... 8

CONCLUSION ......................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

Cases

*Alberts v. Nash Finch Company*,
   245 F.R.D. 399 (D. Minn. 2007) ................................................................... 9

*AT & T Technologies, Inc. v. Communications Workers of America*,
   475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ................................. 3

*Binford v. First Magnus Fin. Corp. (In re First Magnus Fin. Corp.)*
   403 B.R. 659 (D. Ariz. 2009) .................................................................. 7, 8

*Cain v. Inacom Corp.*,
   Adv. No. 00-1724-PJW, 2001 WL 1819997 (Bankr. D. Del. Sept. 26, 2001) ............................ 10

*Ehleiter v. Grapetree Shores, Inc.*,
   482 F.3d 207 (3d Cir.2007) .................................................................. 2, 4

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) ................................................................................... 2

*Guippone v. BH S&B Holdings LLC*,
   09 Civ. 1029 (CM), 2011 WL 1345041 (S.D.N.Y. Mar. 30, 2011) ........................... 11

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
   980 F.2d 912 (3rd Cir.1992) ..................................................................... 5

*In re Bally Total Fitness, Inc.*,
   402 B.R. 616 (Bankr. S.D. 2009) ............................................................ 11

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ................................................................... 13

*In re First NLC*,
   410 B.R. 726 (Bankr. S.D. Fla. 2008) .................................................... 11

*In re General Motors Pick up Truck Fuel Tank Products Liability Litigation*,
   55 F.3d 768 (3d Cir. 1995) .................................................................... 13

*In re MF Global Inc.*,
   512 B.R. 757 (Bankr. S.D.N.Y. 2014) ...................................................... 9

*In re Pharmacy Ben. Managers.*,
   700 F.3d 109 (3d Cir. 2012) ........................................................................................ 4

*In re Pharmacy Benefit Managers Antitrust Litig.*,
   Civ. No. 06-1782, 03-4730, 06-4305, 06-4114, 06-4115, 2017 WL 275398 (E.D.Pa. Jan 18,
   2017) ............................................................................................................................. 13

*In re Protected Vehicles, Inc.*,
   397 B.R. 339 (Bkrtcy. D.S.C. 2008) ........................................................................... 11

*In re Taylor Bean & Whitaker Mortgage Corp.*,
   Adv. Proc. No. 09–ap–00439–JAF, 2010 WL 4025873 (Bankr. M.D.Fla. Sept. 27, 2010) ... 10, 11

*In re Truland*,
   520 B.R. 197 (Bankr.E.D.Va. 2014) ........................................................................... 10

*In re Winstar Commun., Inc.*,
   335 B.R. 556 (Bankr. D. Del. 2005) .............................................................................. 3

*Kettell v. Bill Heard Enterprises, Inc.*,
   400 B.R. 795 (Bankr. N.D. Ala. 2009) ....................................................................... 10

*Maher v. Northland Group, Inc.*,
   17-2957 (KM) (JBC), 2019 WL 3245083 (D.N.J. July 19, 2019) ................................ 4

*Morgan v. Affiliated Foods Southwest, Inc.*,
   No. 4:15CV00296, 2016 WL 1676898 (E.D. Ark. April 26, 2016) ............................ 10

*Puleo v. Chase Bank USA, N.A.*,
   605 F.3d 172 (3d Cir. 2010) .......................................................................................... 2

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) .......................................................................................... 7

*The Connaught Grp., Ltd. (In re The Connaught Grp., Ltd.)*,
   491 B.R. 88 (Bankr. S.D.N.Y. 2013) ............................................................................ 9

*Trippe Mfg. Co. v. Niles Audio Corp.*,
   401 F.3d 529 (3d Cir.2005) ........................................................................................... 3

*In re TWL*,
   712 F.3d 886 (5th Cir. 2013) ...................................................................................... 12

*Whittum v. Saginaw Cnty.*,
   No. 02-10313-BC, 2005 WL 3271810 (E.D. Mich. Nov. 22, 2005) ........................... 13

Statutes

29 U.S.C. §2104(a)(l)(A) ............................................................................................ 4
29 U.S.C. § 2101(a)(2), (a)(3), (a)(5) ........................................................................ 7
29 U.S.C. § 2102 (a)(1) .............................................................................................. 7

Rules

Fed. R. Civ. P. 23(b)(3) .............................................................................................. 8
Fed. R. Civ. P. 23(c) ................................................................................................ 13
Rule 23 .................................................................................................................. 9, 13
Rule 23(a)(4) ............................................................................................................ 13
Rule 23(c)(1)(C) ....................................................................................................... 13

The Trustee's response to Plaintiffs' motion for class certification is titled an "Opposition," (D.I. 51) but his arguments support certification.

Plaintiffs have squarely shown that their *claims* are common to those of the class, are typical of them, and those claims predominate over individual ones.  That is all that is required for class certification.  The Trustee's argument against certification of the WARN claims is, at its core, that there is a class waiver tucked into an arbitration policy that the Trustee wants to extricate and enforce, without the need to enforce the arbitration agreement itself.  However, the Trustee has not provided the Court any grounds on which this wish can be granted or serve as grounds for denying class certification. Other than that, the Trustee offers no rebuttal to Plaintiffs' showing that they have satisfied the fundamental requirements for class certification.

## ARGUMENT

### I.     Neither The Purported Class Waiver, Nor The Arbitration Policy Bar Class Certification

#### A.  The WARN Claim Is Not Subject to The Arbitration Policy or Its Class Waiver

In litigating this claim for almost two years, the Trustee has never sought to compel arbitration of Plaintiffs' WARN claims or strike their Rule 23 allegations, and only brings these up now as a backdoor argument against class certification. The problem with this is one of gating. The Trustee's class waiver argument cannot be reached by this Court at this time because it lies within a labyrinth of arbitration issues that must first be negotiated.  The Trustee has not found a case in which the belated discovery of a handbook that contains a purported arbitration agreement, whose rules preclude an *arbitrator* from hearing a class case, is, without more, sufficient grounds to preclude a Court from granting class certification.

To be clear, the Trustee has not pointed to any policy, agreement, or document that creates a broad class waiver for all purposes.  Rather, the only mention of a class waiver is found within

1

the purported arbitration agreement, confining the class waiver to the arbitration itself. The only express waiver "agreement" that mentions class treatment is the statement: "I agree to arbitrate the shorter of any such claims, disputes or controversies only in an individual capacity and not as a plaintiff or class member in any purported class collective action or representative proceeding." (Art Van Associate Handbook, May 2018, attached hereto as Exhibit A, pgs. 79-80). However, the handbook also states that only the authority of the arbitrator is circumscribed, not that of any court: "The arbitrator shall have the authority to consider and decide disputes subject to arbitration as defined in these rules. The arbitrator shall also have the authority to interpret and apply these rules, determine the scope of these rules and to decide issues of arbitrability. (Rule 23 Arbitrator's Authority/Applicable Law, Exh. A, pg. 83).

Even if the Court were inclined to interpret the class arbitration waiver as applying to judicial proceedings, that would not impact this WARN dispute. The arbitration agreement expressly excludes this case from arbitration and, therefore, from any operation of a class waiver.

According to the Supreme Court, it is a fundamental "principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration" such that "unwilling parties" cannot be forced "to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 187 (3d Cir. 2010), citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995). The Third Circuit has "described the burden on a litigant seeking to prove that the parties intended for the arbitrator to decide questions of arbitrability as "onerous." *Puleo*, 605 F.3d at 187, citing *Ehleiter v. Grapetree Shores, Inc.,* 482 F.3d 207, 221 (3d Cir.2007)).

Here, the purported arbitration agreement covers certain employment-related claims but not others:

Rule 1 of the Mandatory Arbitration Rules contains broad language and a list of non-exclusive claims subject to arbitration, including examples of several employment statutes, among which the WARN Act is not mentioned.  (Exh. A, pg. 79).  Rule 2 of the Mandatory Arbitration Rules then carves out the "claims and disputes [that] are not subject to arbitration."  Specifically carved out are "Claims challenging the company's decision as to the necessity for or the magnitude of a reorganization or <u>reduction of the workforce</u>" (Id., at pg. 80) (emphasis added).  Plaintiffs' WARN Act claim is nothing if not a challenge to the company's decision as to the necessity of reducing its workforce when it did, as set forth in the Complaint and crystallized precisely in the Defendants' motion for summary judgment wherein Defendant claimed it was a necessity, and Plaintiffs asserted that it was not.   (D.I. 43, 49.)  Clearly, neither party ever intended to arbitrate that issue.  Given the Trustee's pending motion for summary judgment before Court, it can be said with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *In re Winstar Commun., Inc.*, 335 B.R. 556, 562 (Bankr. D. Del. 2005) (quotations omitted), citing *Trippe Mfg. Co. v. Niles Audio Corp.,* 401 F.3d 529, 532 (3d Cir.2005) (quoting *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)).

Rule 2 further excludes "Claims based on employee welfare benefit plans subject to ERISA, including health benefit plans, disability plans and life insurance plans[.]" (Rule 2 Claims Not Subject to Arbitration, No. 3, Exh. A, pg. 79)  Here, Plaintiffs have sought in the Complaint "A judgment in favor of the Plaintiffs and each of the affected employees equal to the sum of: their unpaid wages, salaries, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other ERISA benefits, for up to 60 days, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued

3

for that period all determined in accordance with the federal WARN Act, 29 U.S.C. §2104(a)(l)(A)." (D.I. 1, ¶2, 51-53, 54). Those claims do not fall within the categories subject to arbitration.

### B. The Trustee Has Waived Enforcement of The Arbitration Policy

Another gating issue that this Court can and should determine is whether the Defendant, by its inaction and contrary conduct, has waived its right to enforce the arbitration agreement, and with it the class waiver.

The issue of whether a party has waived the right to arbitration by its litigation conduct is one to be decided by the court, not the arbitrator. *Ehleiter v. Grapetree Shores, Inc*., 482 F.3d 207, 217–21 (3d Cir. 2007). The factors considered by Courts regarding litigation conduct include: (1) timeliness or lack thereof of the motion to arbitrate; (2) extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings; (4) the extent to which a party seeking arbitration engaged in non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery. *See In re Pharmacy Ben. Managers*., 700 F.3d 109, 121 (3d Cir. 2012) ("'[W]here a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing ... arbitration may more easily show that its position has been compromised, i.e., prejudiced,' because under these circumstances we can readily infer that the party claiming waiver has already invested considerable time and expense in litigating the case in court, and would be required to duplicate its efforts, to at least some degree, if the case were now to proceed in the arbitral forum.'") quoting *Ehleiter*, 482 F.3d at 224; *Maher v. Northland Group, Inc.*, 17-2957 (KM) (JBC), 2019 WL 3245083 (D.N.J. July 19, 2019) (motion to compel arbitration denied

because two years of litigation conduct showed waiver of right to arbitrate); *Hoxworth v. Blinder, Robinson & Co., Inc.,* 980 F.2d 912, 925 (3rd Cir.1992) (finding waiver or right to arbitrate where delay was eleven months).

Here, the Trustee's litigation conduct shows an intent to use the Court to adjudicate Plaintiffs' WARN claims. The Trustee has never filed a motion to compel arbitration. What the Trustee has done is fully participate in the adversary proceeding by taking part in pretrial proceedings, filing two answers (D.I. 25, 40), stipulating to a scheduling order that specifically included provisions regarding formal discovery (D.I. 31), engaging in informal discovery by exchanging wage data with Plaintiffs' counsel, participating in mediation (D.I 49-1 at ¶¶ 4, 6, 7), engaging in formal discovery (D.I. 13) and most importantly, filing a motion for summary judgment on some of its affirmative defenses, thereby seeking this Court's determination on the merits. (D.I. 43).

The Trustee obviously hopes the Court will grant him summary judgment – and if that decision is unfavorable, he might then seek to arbitrate the matter as a second bite at the apple. To avoid entering arbitration against a certified class (in which he would need to ask the arbitrator to decertify a class treatment that is already the law of the case) the Trustee asks the Court to delay determination of the class certification issue until after it rules on the motion for summary judgment. The Trustee should not be permitted to use arbitration as a elective shield to oppose any positive relief the Court may grant the Plaintiffs, and then as a sword to undo that relief in an arbitration. The Trustee could have initiated arbitration but instead sat on that option all the while expending the bankruptcy estate's fees and time as well as using the Court's resources. The Trustee asks the Court for summary judgment of dispositive issues at a point where no arbitrator can now interpret the arbitrability and waiver provisions of the arbitration agreement. These actions show

that the Trustee never intended arbitration as the main avenue for resolving the WARN dispute - he merely holds that option in reserve in case litigation does not result in the desired outcome.  The cudgel of arbitration adds expense, waste and prejudice, and warrants waiver.

Although the Trustee states blithely that he does not oppose arbitration (D.I. 52, pg. 23, fn. 23), one reason it may not have sought arbitration, and still does not is that it would drown the estate in expense. The following provision in the Employee Handbook places the cost of arbitration on the company: "Rule 26.  Fees and Expenses All costs of arbitration, including the arbitrator's fees and expenses and the cost of the hearing room shall be borne fully by the company, except as otherwise limited in these rules."  (Exh. A, pg. 84). Plaintiffs have shared estimates with the Trustee as to the many thousands of dollars each arbitration in Michigan and elsewhere will cost, exclusive of the Trustees' attorneys' fees.  Plaintiffs' counsel has been retained by hundreds of employees in this matter, each of whom is eligible to commence their own individual arbitration, and many hundreds more would be eligible. The upfront costs of these arbitrations will be in the mid-to-high seven figures, not counting the risk of damages.  It is a case of being careful what one asks for.

## II.    The Trustee Has Not Found Any Deficiency in Plaintiffs' Argument for Class Certification

### A.  Plaintiffs Satisfy Numerosity under Rule 23(a)

The Trustee argues that Plaintiffs do not satisfy numerosity because they have not proven that the class numbers around 2,000 individuals with claims of approximately $15,000 apiece (D.I. 51 at ¶ 34).   This is a disingenuous argument. The Trustee concedes that the class members' identities are ascertainable.  In the First Amended Answer to the Complaint, "[t]he Trustee admits that the Debtors' books and records contain addresses for the Terminated Employees" and "[t]he Trustee admits that the Debtors' books and records contain the rate of pay and benefits for the

6

Terminated Employees." (D.I. 40 at ¶¶ 34, 35). The Trustee does not dispute that the size of each claim is about $15,000. *Id.*   In preparing for mediation, the parties informally exchanged information regarding the composition of the putative class, including the class members' identities, addresses, rates of pay, and work sites. The work of identifying the composition of the class and the amount of each putative class member's claim is complete.

The Trustee's own words reveal that his argument on numerosity is also not serious. In paragraph 34 of his brief, the Trustee states that Plaintiffs do not offer "facts" as to the "geographic dispersion of the class and the ease by which they may be identified." (D.I. 51 at ¶ 34). Two paragraphs later, the Trustee states that "*[t]he group of potentially "Affected Employees" is known by the Trustee and worked in only 10 locations.* He can calculate the amounts owed to each should this Court determine the WARN Act is applicable to the Plaintiffs." (D.I. 51 at ¶ 36) (emphasis added). The WARN Act requires the termination of at least 50 full-time employees at a single site of employment for coverage, thus by the Trustee's own admission there were "Affected Employees" in 10 locations, that means the class size numbers at least 500 members, which far exceeds the minimum threshold for numerosity.  *Id.  See also,* 29 U.S.C. § 2101(a)(2), (a)(3), (a)(5), 29 U.S.C. § 2102 (a)(1); *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23 has been met.").

The Trustee's reliance on *First Magnus* fails for several reasons.  (D.I. 51 at ¶ 35 (citing *Binford v. First Magnus Fin. Corp. (In re First Magnus Fin. Corp.),* 403 B.R. 659 (D. Ariz. 2009).) Plaintiffs' counsel is intimately familiar with *First Magnus*, as they were class counsel to the former employees in that WARN Action, which ultimately settled on a class-wide basis. *See In re.*

*First Magnus Fin. Corp.*, 08-01494-GBN, Final Order Approving Settlement Dec. 22, 2009 (Bankr.D.Ariz., D.I. 331).[2]  The denial of class certification in *First Magnus* was based on circumstances not present here. At the time the *First Magnus* plaintiffs sought class certification, 5,300 individual proofs of claim were already on file for the 5,500 putative WARN class members. 403 B.R. at 664. Here, Plaintiffs are unaware of any substantial number of individual proofs of claim filed for WARN damages in the Art Van bankruptcy. Additionally, after the *First Magnus* district court upheld the bankruptcy court's denial of class certification and extensive litigation that included appeals, the *First Magnus* defendant concluded that the class action device was the superior method of resolving thousands of WARN claims rather than the bankruptcy claims process.  Bankruptcy Judge George B. Nielsen certified a WARN class for settlement purposes and approved the common fund in a settlement of $2.6 million and $2.9 million in contingent proceeds against the bankrupt estate. *See, Binford et al v. First Magnus Capital, Inc.,* Case No. 08 -01494 (Bankr. D. Ariz.) (Transcript of Hearing, March 16, 2010, pg. 3:16-8:1, detailing class counsel's effort and history of litigation) (attached hereto as Exhibit B). The outcome of *First Magnus* supports class certification here.  Plaintiffs satisfy Rule 23(a)'s numerosity requirement because they have shown the size of the potential class (approximately 2,000 members), the small size of each claim (about $15,000), and the impracticability of joinder.

### B.    The Class Action Device is Superior to the Bankruptcy Claims Process

Superiority depends on which of the available methods will most "fairly and efficiently adjudicate[e] the controversy." Fed. R. Civ. P. 23(b)(3).  The Trustee does not have a persuasive response to that criterion. The Trustee does not argue that the individual claims process is superior to class certification because it brings claims forward and does them justice.  To the contrary, the

---

[2] Proposed Class Counsel here also represented the WARN claimants in *Cote v. Fresh &Easy, L.L.C. (In re Fresh &Easy, L.L.C.*), 15-12220 (BLS), Adv. No. 15-51906 (BLS) (Bankr. Del., D.I. 100), which settled on a class basis.

Trustee knows the claims process will suppress claims because low amount claims are unfeasible for individuals to litigate on their own. The Trustee has no rebuttal to the argument that the bankruptcy process of processing and defending possibly thousands of separate claims is inferior to defending one class claim.

The requirement of Rule 23, that a class may be certified based on similarities which may ultimately prove fatal to the claims, means that defendants "should *favor* certification of a plaintiff class, as [Defendants] 'win' [on the merits] would then bind all class members, instead of only the individual plaintiffs." *Alberts v. Nash Finch Company*, 245 F.R.D. 399, 408 n.4 (D. Minn. 2007). A denial of class certification, on the other hand, invites a "multiplicity of activity" that "Rule 23 was designed to avoid" and jeopardizes the efficient and orderly administration of the estate by *inter alia*, opening up the possibility that a new bar date will be needed for WARN claimants. *In re MF Global Inc.*, 512 B.R. 757, 764-65 (Bankr. S.D.N.Y. 2014) ("The principal consideration must be the effect of the class certification on the administration of the estate.") (quoting *The Connaught Grp., Ltd. (In re The Connaught Grp., Ltd.)*, 491 B.R. 88, 98 (Bankr. S.D.N.Y. 2013)).

Just a few words give away the game when it comes to the Trustee's argument that the bankruptcy claims process is superior to the class action device. Arguing in favor of the claims process Defendant states, "the Trustee will be in the best position to calculate the correct amount due and owing to each "Affected Employee" (as defined in the WARN Act) through the customary and efficient claims resolution process" and as "[t]he group of potentially "Affected Employees" is known by the Trustee and worked in only 10 locations[,][h]e can calculate the amounts owed to each *should this Court determine the WARN Act is applicable to the Plaintiffs*." (D.I. 51 at ¶ 36). The last portion of that statement is the most telling.  The WARN Act either applies to everyone in the class (a decision that favors Plaintiffs) or it does not apply to anyone at all (a decision that

favors the Trustee). The likelihood of a debtor vigorously defending against a WARN lawsuit is reason to find that the class action device is superior to the claims process. *See Morgan v. Affiliated Foods Southwest, Inc.*, No. 4:15CV00296, 2016 WL 1676898 at *8 (E.D. Ark. April 26, 2016) ('if the Court were to deny certification and the claimants had to proceed individually through the claims procedure in bankruptcy court, it is clear that Affiliated Foods would zealously defend against those claims.").

The Trustee argues that because the WARN class is a subset of the entire laid off workforce, it would not behoove the estate to resolves the hundreds of WARN claims in one stroke as a class, as opposed to the claims process. The Trustee reasons that even with a WARN class, the estate would still have to reconcile all the non-WARN claims. That makes little sense. The consolidated WARN class would save the estate from having to reconcile and possibly litigate the hundreds of contentious WARN claims. That would free the estate to concentrate on reconciling only the non-WARN claims. (D.I. 51, ¶ 40). *See Kettell v. Bill Heard Enterprises, Inc*., 400 B.R. 795, 801 (Bankr. N.D. Ala. 2009) (finding that it was in the best interests of the putative class members, judicial economy, and the defendant to adjudicate the WARN Act claims in one single action, rather than through hundreds of individual proofs of claims). *See also, In re Truland*, 520 B.R. 197, 208 (Bankr.E.D.Va. 2014) (same); *In re Taylor Bean & Whitaker Mortgage Corp.*, Adv. Proc. No. 09–ap–00439–JAF, 2010 WL 4025873 at *3 (Bankr. M.D.Fla. Sept. 27, 2010) (same). In *In re Cain v. Inacom Corp.*, Adv. No. 00-1724-PJW, 2001 WL 1819997 (Bankr. D. Del. Sept. 26, 2001) (there are "procedural problems associated with a class proof of claim" and that "resolving the WARN Act claims in the adversary proceeding framework is appropriate in this bankruptcy case.)

The Trustee argues that the Court should dismiss Plaintiffs' adversary proceeding simply

10

because putative class members may have the option of filing individual proofs of claim (D.I. 51 at ¶ 21, fn. 27), yet offers no compelling reason for the Court to do so.  The claims bar date has passed. Reopening the bar date for putative class members to file their own proofs of claim would delay the administration of the estate to other creditors. The Trustee is likely to oppose each and every WARN claim on similar grounds that it has answered Plaintiffs' adversary proceeding, with similar affirmative defenses. Any objection lodged by the Trustee in response to those claims (or a class proof of claim, should one be filed) would render them contested matters, thus transforming them into a multiplicity of redundant adversary proceedings that will likely be litigated for months, if not years.  The argument that each of the terminated employees might be better served filing proofs of claims for their WARN damages would only make sense if the Trustee raises no affirmative defenses to WARN liability.  *See In re First NLC*, 410 B.R. 726, 730 (Bankr. S.D. Fla. 2008) ("[T]he Court finds that resolution of the WARN Act claims will be expedited and handled more efficiently in a class adversary proceeding because the claims will be handled collectively rather than in a piece meal fashion."); *In re Taylor Bean & Whitaker Mortgage Corp.,* 2010 WL 4025873 at *8 (same); *Guippone v. BH S&B Holdings LLC*, 09 Civ. 1029 (CM), 2011 WL 1345041, at *2 (S.D.N.Y. Mar. 30, 2011) (granting certification of WARN class in chapter 7 case)); *In re Protected Vehicles, Inc.*, 397 B.R. 339, 343 (Bkrtcy. D.S.C. 2008).

What *would* cause more delay and inefficiency is if WARN *were not* litigated ahead of the claims resolution phase.  Leaving a major priority claim until the end to be litigated could easily delay distributions to other creditors.  For these reasons, the Trustee's reliance on *In re Bally Total Fitness Inc.*, is misplaced. The *Bally* Court denied a motion to certify a class proof of claim because, among other things, there were two pending appeals of decisions arising from the defendant's filing of requests to arbitrate the plaintiffs' claims. *In re Bally Total Fitness, Inc.*, 402

B.R. 616, 623-624 (Bankr. S.D. 2009). The *Bally* Court stated that class certification would not move the class claims along because of the pending arbitration proceedings which risked inconsistent outcomes and would delay the Chapter 11 debtor employer's reorganization efforts. None of those scenarios exist here.

The Trustee's argument against allowing this WARN adversary proceeding to proceed is therefore backwards.  It would be unfair to the other creditors to keep the WARN claims hidden among the hundreds, if not thousands, of other claims to be sprung on them when claims objections are issued and many creditors are hoping soon to be paid.  The better practice is for the filed adversary proceeding to put all concerned parties on notice that a priority (or sometimes administrative claim) must be figured into the case, and that a possible multi-year litigation must be resolved.

The Trustee's argument that Plaintiffs' counsel seeks to enrich themselves at the expense of the estate and other creditors lacks credibility. As in *First Magnus*, proposed class counsel would seek attorneys' fees from a common fund should the WARN adversary proceeding settle. This was also the outcome in *In re TWL*, another case where proposed class counsel represented a WARN class. (D.I. 51 at ¶ 39). In *TWL*, after the Bankruptcy Court denied class certification of a WARN claim against a Chapter 7 debtor, the Fifth Circuit Court of Appeals remanded and the case was ultimately certified and settled on a class basis. *In re TWL*, 712 F.3d 886 (5th Cir. 2013). *See also, Teta v. TWL Corp.,* Adv. Proc. No. 08-04184-BTR, Order Granting Class Certification (D.I. 51) (attached hereto as Exhibit C).

Recognizing that later merit-based discovery may uncover circumstances which change its conclusion on class certification, the Court should certify the class now to allow the litigation to proceed because it may later revisit certification, refine the class scope or size, and/or create

subclasses should the case show such a need. Fed. R. Civ. P. 23(c); *In re Pharmacy Benefit Managers Antitrust Litig.*, Civ. No. 06-1782, 03-4730, 06-4305, 06-4114, 06-4115, 2017 WL 275398 at *33 (E.D.Pa. Jan 18, 2017) ("an "order that grants or denies class certification may be altered or amended before final judgment"), *citing* Rule 23(c)(1)(C)). *See also, In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) (court has broad power under Rule 23 to modify or decertify classes as necessary); *In re General Motors Pick up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 792 (3d Cir. 1995) (same); *Whittum v. Saginaw Cnty.,* No. 02-10313-BC, 2005 WL 3271810, at *6 (E.D. Mich. Nov. 22, 2005) (a class certification order is "inherently tentative" and a court may narrow, broaden or even de-certify a class any time before a final judgment is entered).   Should the Court now or later decide that the proposed Class Representatives cannot adequately represent the class under Rule 23(a)(4), Plaintiffs ask for leave to substitute class representatives for consideration.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion in its entirety.

Dated: December 20, 2021                    Respectfully Submitted,

                                     */s/ Michael J. Joyce*
                                     Michael J. Joyce (No. 4563)
                                     **JOYCE, LLC**
                                     1225 King Street, Suite 800
                                     Wilmington, DE 19801
                                     Telephone: (302)-388-1944
                                     Email: mjoyce@mjlawoffices.com

OF COUNSEL:

René S. Roupinian (*admitted pro hac vice*)
Jack A. Raisner (*admitted pro hac vice*)
**RAISNER ROUPINIAN LLP**
270 Madison Avenue, Suite 1801

New York, New York 10016
Telephone: (212) 221-1747
Facsimile: (212) 221-1747
Email: rsr@raisnerroupinian.com
Email: jar@raisnerroupinian.com

*Attorneys for Plaintiffs and the putative class*